STATE OF CONNECTICUT *v.* ARNOLD GREENMAN

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE NO. MV 12-55455

Argued July 7—decided September 19, 1969

*Vincent A. Laudone,* of Norwich, for the appellant (defendant).

*Joel E. Janenda,* special assistant prosecuting attorney, for the appellee (state).

KOSICKI, J.  After a trial to the jury, the defendant was convicted of a charge of speeding in a motor vehicle in violation of General Statutes § 14-219 (a) (2).  From the judgment entered on the verdict, he has appealed.  The sole question before us is whether the court erred in admitting a document, purporting to be a record of a frequency calibration of the radar instrument used to measure the defendant's speed, as a business entry of the particular troop of the state police department.  General Statutes § 52-180.

No finding was requested and none was made or required.  There was no exception to the court's instructions to the jury, and we assume that the charge was correct.  There was no motion after ver-

dict; therefore the verdict may not be disturbed unless the ruling excepted to in the course of trial and assigned as error was erroneous and harmful.

The facts are not in dispute. On November 8, 1968, the defendant was issued a summons on route 2 in Glastonbury by a member of the state police department. The defendant was allegedly observed operating his motor vehicle on a public highway at a speed proscribed by § 14-219 (a) (2), and the basis of the arrest was a reading on a radar device operated by members of state police troop K.

Evidence was introduced as to the testing of the accuracy of the device by means of tuning forks, and, despite the brief record before us, we can reasonably conclude that the particular radar instrument used was operating accurately. Our Supreme Court has held that such tests, lacking evidence attacking the accuracy of the tuning forks, are sufficient to establish the accuracy of the radar unit. *State* v. *Tomanelli*, 153 Conn. 365, 367, 372. There was further evidence to prove the accuracy of the tuning forks. Records of the state police department show that each of the tuning forks, described as forty-, sixty-, and eighty-mile-per-hour tuning forks, had been tested by the state police on October 3, 1968, and, with a minute tolerance for error, were found to be accurate. No objection was raised to the admission of this evidence, and no claim is made here impeaching the accuracy of the tuning forks. According to the rule announced in *Tomanelli*, this would have been sufficient to prove the accuracy of the radar unit used with reasonable certainty. The court, in that case, in speaking of taking judicial notice of the scientific accuracy of the Doppler-shift principle as a means of measuring speed if the principle is correctly applied, said (p. 371): "Judicial notice does not extend to the accuracy or efficiency

of any given instrument designed to employ the principle. Whether the instrument itself is accurate and is accurately operated must necessarily be demonstrated to the satisfaction of the trier in order to render the evidence produced by it admissible."

The introduction of the disputed document was, perhaps, prompted by the apparent necessity of proving the radar unit accurate, in anticipation of a hypothesis of inaccuracy which might be raised before the jury had no such evidence been produced. It is not our duty, in the instant case, to resolve the question as to what proof must be offered by the state to present a prima facie case with respect to the accuracy of the instrument.

We may make the observation that our law is firmly established that, unless the contrary appears, public officers are presumed to have performed properly the duties with which they are charged. *Bartlett* v. *Rockville,* 150 Conn. 428, 430; *McKeithen* v. *Stamford,* 149 Conn. 619, 622; *Tremp* v. *Patten,* 132 Conn. 120, 125; *State ex rel. Brown* v. *Lawlor,* 119 Conn. 155, 161; *Salt's Textile Mfg. Co.* v. *Ghent,* 107 Conn. 211, 215; *Hellman* v. *Karp,* 93 Conn. 317, 323; *Sibley* v. *State,* 89 Conn. 682, 685; *Atwater* v. *O'Reilly,* 81 Conn. 367, 371. It cannot be seriously disputed that the commissioner of state police and members of the state police department are public officers. The presumption that they have performed their duties properly in the present case, while rebuttable, must stand unless the contrary appears. Under the provisions of General Statutes § 29-2, the commissioner shall have general jurisdiction of the affairs of the state police department and shall have all the powers and privileges conferred by statute on a state policeman. He shall, among other specified duties, maintain a traffic enforcement division and a motor patrol (§ 29-4); and, under § 29-7, he

164

shall devise and make effective patrols for preventing or detecting violations of any law relating to motor vehicles. In the performance of his duties, he may select such instruments as in his judgment will assist the department in the performance of its duties. We may presume that he had used reasonable discretion in selecting the particular radar unit used in this case for the measurement of speed of motor vehicles traveling on public highways. The observation may also be made that his duty does not end with selection of the instrument but extends to supervision as to its use, care and maintenance so that it may function accurately at all times when needed. That would necessarily require expert and scientific inspection at reasonable intervals by persons qualified and equipped for that purpose.

The defendant had made timely objection to the introduction of a letter, from Automatic Signal Division of Laboratory for Electronics, Inc., which was claimed by the state to be a business entry of the police department. For a writing to be admissible under the statute (§ 52-180), it is required to meet three qualifications: (1) It must be made in the regular course of business. (2) It must be the regular course of business to make it. (3) It must be made at or near the time of the act, transaction or event. *Szela* v. *Johnson Motor Lines, Inc.*, 145 Conn. 714, 723; Holden & Daly, Conn. Evidence § 89. Technically, the defendant's objection was correct on the ground stated. It does not follow, however, that the introduction of this document was harmful to the defendant. It was corroborative of the performance of the duty of the commissioner and the state police department to maintain the unit in an accurate operating condition. It shows that this duty was performed by an organization duly selected by the commissioner and that a certificate as to frequency measurements of the unit examined

was signed by a person licensed by the federal communications commission to make such measurements in accordance with the rules and regulations of the commission.

No claim is made that the letter objected to was anything more than what appears on its face. It is a certificate that the radar unit was inspected for frequency and radiated power by personnel qualified for that purpose. It contains no conclusion as to the efficiency or accuracy of the particular instrument. It is couched in technical language for the guidance of the state police department and, unless explained by one familiar with the phraseology used, is meaningless to the trier, whether court or jury. We cannot say, under the circumstances, that this evidence, though improperly admitted as a business entry, could have been prejudicial to the defendant. It is a "fundamental rule of appellate procedure in the review of evidential rulings, whether resulting in the admission or exclusion of evidence, that an appellant has the burden of establishing that there has been an erroneous ruling which was probably harmful to him." *Casalo* v. *Claro,* 147 Conn. 625, 630, and cases cited.

As we have already noted above, the usual test by use of tuning forks was not impeached and was in itself a valid test of the accuracy of the instrument. In addition, the tuning forks had been tested and their accuracy was not questioned. See *State* v. *Tomanelli,* 153 Conn. 365, 372. At most, the exclusion of the letter would have tended to introduce a hypothesis of innocence. See *State* v. *DeCoster,* 147 Conn. 502, 505; *State* v. *Foord,* 142 Conn. 285, 294. "A hypothesis in such instance is not evidence and consists of nothing more than the probability of a reasonable explanation of proven facts which is equally consistent with a finding of innocence as

well as of guilt. Whether such hypothesis of innocence exists or is valid rests solely in the reasonable judgment of the trier of the facts . . . ." *State* v. *Munroe,* 22 Conn. Sup. 321, 331, 1 Conn. Cir. Ct. 5, 15. There was ample undisputed evidence that the radar unit correctly measured the speed of the defendant's motor vehicle, and, therefore, the admission of the letter was not harmful.

There is no error.

In this opinion DiCenzo and Jacobs, Js., concurred.