## STATE OF CONNECTICUT *v.* BRETT KWAAK
### (7150)

DALY, NORCOTT and FOTI, Js.

Argued October 10, 1989—decision released April 3, 1990

*John R. Gulash, Jr.,* with whom, on the brief, was *Peter J. McGuinness,* for the appellant (defendant).

*Leon F. Dalbec, Jr.,* deputy assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Gerald D. Eisenman,* assistant state's attorney, for the appellee (state).

DALY, J. The defendant appeals from the judgment of conviction, after a jury trial, of manslaughter in the second degree with a motor vehicle in violation of General Statutes § 53a-56b (a),[1] and operating a motor vehicle while under the influence of an intoxicating liquor in violation of General Statutes § 14-227a (a) (2). The defendant's claims of error relate only to the charge of manslaughter in the second degree with a motor vehicle. The defendant claims that the trial court erred (1) in denying his motion for judgment of acquittal which alleged that there was insufficient evidence presented as to the element of causation, (2) in admitting an autopsy report into evidence, (3) in restricting his cross-examination of one of the state's accident reconstruction witnesses, (4) in admitting the testimony

---

[1] General Statutes § 53a-56b provides: "MANSLAUGHTER IN THE SECOND DEGREE WITH A MOTOR VEHICLE: CLASS C FELONY. (a) A person is guilty of manslaughter in the second degree with a motor vehicle when, while operating a motor vehicle under the influence of intoxicating liquor or any drug or both, he causes the death of another person as a consequence of the effect of such liquor or drug.

"(b) Manslaughter in the second degree with a motor vehicle is a class C felony and the court shall suspend the motor vehicle operator's license or nonresident operating privilege of any person found guilty under this section for one year."

of the second of the state's accident reconstruction witnesses as it relates to the tendencies of intoxicated drivers, and (5) in improperly instructing the jury as to reasonable doubt. We find no reversible error.

The facts are as follows. On November 14, 1986, at approximately 6 p.m., the defendant met a female friend at a restaurant in Westport. He admitted to having consumed three beers there. He left at approximately 9:30 p.m. and headed for his home town of Huntington. He drove his Dodge pickup truck on Route 95 north and then exited onto Route 25 north. At approximately 10:47 p.m., the defendant was operating his pickup truck in the far right lane of that three lane highway in Bridgeport, when he encountered a Subaru stationwagon that was being driven by the victim at a considerably slower speed than the defendant was traveling. The defendant attempted to pass the Subaru but did not reduce his speed quickly enough and struck it in the rear, causing the gas tank to rupture and the car to catch on fire. The victim was in the car when it burst into flames and died as a result of the fire.

The police and firemen arrived within a few minutes after the accident. Sergeant John Ramik of the Connecticut state police was in charge of the scene and was assisted by Troopers Adrienne LaMorte and John Burturla and support personnel. The investigating officers at the scene detected a strong odor of alcohol on the defendant's breath, noticed that his speech was slurred, his eyes were bloodshot, and that he was staggering. The defendant failed a field sobriety test. As a result, he was arrested for driving under the influence of alcohol or drugs in violation of General Statutes § 14-227a and transported to police headquarters in Westport. Two hours after the accident, the defendant voluntarily submitted to a breathalizer test. The first test was administered at 1:45 a.m. and measured his blood alcohol level at .150, and the second test, administered at

2:19 a.m., measured his blood alcohol level at .144. On the basis of these figures, Sanders Hawkins, chief toxicologist for the department of health services, testified at trial that the blood alcohol level at the time of the accident was approximately .186. At police headquarters, the defendant was also charged with manslaughter with a motor vehicle in violation of General Statutes § 53a-56b (a).[2]

At trial, the state presented evidence that, on the night of the accident, the weather was dry and clear. The evidence also showed that the accident occurred on a straight, well illuminated section of Route 25 and that visibility was 1000 to 1500 feet at the time of the accident. The state offered the expert testimony of LaMorte and Burturla. Expert testimony showed that the defendant's vehicle was traveling thirty-one miles per hour faster than the victim's vehicle at the time of impact, but the expert was not able to determine how fast the defendant's vehicle was traveling. In addition, there was expert testimony that the major damage was to the left rear of the Subaru and to the right front fender of the pickup truck and that there were no brake or skid marks at the scene of the accident. Furthermore, the state presented expert testimony that the defendant's inability to judge the distance and speed of the Subaru was consistent with the conduct of intoxicated drivers and that this conduct caused the accident and subsequent death of the driver. The state also presented the testimony of the pathologist who performed the autopsy on the victim. The pathologist's autopsy report was also permitted as an exhibit over the defendant's objection.

[2] The defendant was also charged with operating an unregistered vehicle and failure to wear a seat belt. The amended information, however, only charged the defendant with manslaughter in the second degree with a motor vehicle and driving under the influence of an intoxicating liquor or drug.

At trial, the defendant never conceded that he was intoxicated.[3] He presented a witness who happened to be on the same road a short time before the accident occurred. This witness testified that shortly before the accident, he saw a vehicle that closely resembled the victim's vehicle on the right shoulder of Route 25 with the windows fogged and the lights dimmed. The defendant also presented expert evidence contradicting the state's evidence on the issue of causation, that the accident most likely occurred as a result of the Subaru's pulling out from the right shoulder and crossing in front of the path of the defendant's pickup truck.

The jury convicted the defendant on both charges, and this appeal followed.

I

The defendant's first claim is that the court erred in denying his motion for judgment of acquittal, which was based on the state's failure to prove beyond a reasonable doubt that the defendant's intoxication caused the death of the victim. We do not agree.

" 'In determining whether the evidence is sufficient to sustain a verdict, we have said that " 'the issue is whether the jury could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt. . . . [T]he evidence presented at trial must be given a construction most favorable to sustaining the jury's verdict.' " . . . "Each essential element of the crime charged must be established by proof beyond a reasonable doubt"; *State* v. *Stankowski,* 184 Conn. 121, 126, 439 A.2d 918, cert.

---

[3] The finding that the defendant was "intoxicated" while the statute requires proof that he was "under the influence" is not an issue in this appeal because the defendant has made no claim as to the sufficiency of evidence of this element.

denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 558 (1981); and " 'although it is within the province of the jury to draw reasonable logical inferences from the facts proven, they may not resort to speculation and conjecture.' " (Citations omitted.) *State* v. *Little,* 194 Conn. 665, 671, 485 A.2d 913 (1984).

In the present case, the defendant challenges only the element of causation. General Statutes § 53a-56b (a) provides that, "A person is guilty of manslaughter in the second degree with a motor vehicle *when, while operating a motor vehicle under the influence of an intoxicating liquor or any drug or both, he causes the death of another person as a consequence of the effect of such liquor or drug."* (Emphasis added.) No. 85-147 of the 1985 Public Acts modified the causation language of General Statutes (Rev. to 1975) §§ 53a-56b (a) and 53a-60d, the latter section being assault in the second degree with a motor vehicle. Previously, § 53a-56b (a) provided that *"when, in consequence of his intoxication while operating a motor vehicle, he causes the death of another person."* (Emphasis added.) Nevertheless, a legislative history of this amendment reveals that the modification of "in consequence" to "as a consequence of" was not made to change any previously defined burden of proving causation.[4] The purpose, rather, was

___

[4] In fact, the original causation language in Public Acts 1985, No. 85-147, in lieu of "in consequent" stated "was a substantial factor in causing such death." House Amendment "A" replaced this proposal to "as a consequence." Representative William A. Wollenberg proposed the amendment to this public act and Representative Robert M. Frankel (121st District), speaking in support of this amendment, stated: "Yes, Mr. Speaker, I'd like to attempt to try to assist the chamber in understanding the reason for the amendment. The file copy was designed to correct a problem that arose from a court decision. It was an attempt to use the right definition for under the influence, because in that court case, someone escaped from being found guilty because the statute that is on the books today, talks about intoxication, instead of about the words, 'under the influence,' and that is what the file copy tried to do, to put the words, 'under the influence' in, and take the word 'intoxication' out, because the courts interpreted them differ-

to remove the language in §§ 53a-56b and 53a-60d that referred to a person's being "intoxicated" and instead to insert the requirement that a person has to be "under the influence" in order to "get tougher on drunk drivers" and to avoid the result reached in an uncited court decision where an individual escaped liability under the law because the court found that the individual was not "intoxicated" even though he may have been under the influence. See footnote 4, supra.

This is the first case to determine the causation requirement of § 53a-56b (a). The predecessor statutes of §§ 53a-56b and 53a-60d were General Statutes (Rev. to 1985) §§ 53a-57 and 53-17.[5] These sections contained the same causation language, "in consequence," as the original version of § 53a-56b. In *State* v. *Alterio,* 154 Conn. 23, 29–30, 220 A.2d 451 (1966), our Supreme Court interpreted the causation requirements of § 53-17, which provided that, "any person operating a motor vehicle upon the highways of this state who,

___

ently, and the file copy would indeed make the law more tough on drivers, but I believe inadvertently [the legislative commissioner's office] threw in some new language that the committee didn't consider, and they threw in the words, 'substantial,' and we have no definition for substantial.

"Is it 20%, is it 50%, is it 60%? It's something more than a little, but is it 70 or 80. We don't know, and I don't think it was appropriate to put it there. The existing law says, 'in consequence of,' and that is what Rep. Wollenberg's amendment would do, would use that same language. But it would still leave the file copy intact to toughen up our drunk driving laws to do what was intended by the committee, and to correct the problem that that court decision brought about.

"And so I would urge the membership to support the amendment, which I think will make the file copy to do what the committee intended, toughen up our laws, but not interject and introduce something brand new called 'substantial' as opposed to 'in consequence.' It's technical, it's legal, but I think if we put this new language in, that inadvertently slipped into the file copy, we're going to have an enormous problem in interpreting what is something even beyond civil law, below civil law, in terms of its consequence." 28 H.R. Proc., Pt. 9, 1985 Sess., pp. 3129–3131.

House Amendment "A" was adopted and ruled technical. Id., 3132.

[5] See Connecticut General Assembly, Office of Legislative Research, Summary of 1985 Public Acts, p. 156.

*in consequence* . . . of any gross or wilful misconduct
or of gross negligence, *causes any loss of life"* (empha-
sis added), to mean that "[i]t was the state's burden
to prove that a proximate cause of the death was the
unlawful acts of the [defendant] . . . ." While the
unlawful act in § 53-17 was gross or wilful misconduct
or gross negligence, the unlawful act in the present
statute is driving under the influence of an intoxicat-
ing liquor or drug (intoxication).[6] This court adopts
these causation requirements set forth in *Alterio* and
applies them to General Statutes § 53a-56b.

The court in *Alterio* then concluded that " '[e]very
person is held to be responsible for the natural conse-
quences of his acts, and if he commits a felonious act
and death follows, it does not alter its nature or dimin-
ish its criminality to prove that other causes co-operated
to produce that result.' *State* v. *Leopold,* [110 Conn.
55, 61, 147 A. 118 (1930)]." *State* v. *Alterio,* supra, 30.
Thus, contrary to the negligence cases relied upon by
the defendant, the issue of contributory negligence does
not exist in criminal cases that require the state to
prove that the defendant proximately caused the death
of another.

In *State* v. *Spates,* 176 Conn. 227, 233–34, 405 A.2d
656 (1978), cert. denied, 440 U.S. 922, 99 S. Ct.
1248, 59 L. Ed. 2d 475 (1979), our Supreme Court
defined the criminal law concept of proximate cause
as it applies to a manslaughter statute (General Stat-
utes § 53a-55 [a] [3]): " 'Proximate cause' in the crimi-
nal law does not necessarily mean the last act of cause,
or the act in point of time nearest to death. The con-
cept of proximate cause incorporates the notion that
an accused may be charged with a criminal offense even

---

[6] Although the word "intoxication" appears throughout this opinion, the
word is meant to be defined as "under the influence of an intoxicating liquor
or drug."

though his acts were not the immediate cause of death. *An act or omission to act is the proximate cause of death when it substantially and materially contributes, in a natural and continuous sequence, unbroken by an efficient, intervening cause, to the resulting death. It is the cause without which the death would not have occurred and the predominating cause, the substantial factor, from which death follows as a natural, direct and immediate consequence.* See *State* v. *Tomassi,* 137 Conn. 113, 75 A.2d 67 [1950]; *State* v. *Leopold,* supra; 40 C.J.S., Homicide, § 11 (b), p. 854; see, generally, Cardozo, The Paradoxes of Legal Science, pp. 81 et seq.; Beale, 'The Proximate Consequences of an Act,' 33 Harv. L. Rev. 633." (Emphasis added.) Applying the principle of *State* v. *Alterio,* supra, and the definition in *State* v. *Spates,* supra, to the present case, the causation element requires that the state prove beyond a reasonable doubt, first that the death of a person would not have occurred "but for" the defendant's intoxication, and second, that the defendant's intoxication substantially and materially contributed to the death of a person in a natural and continuous sequence, unbroken by an efficient, intervening cause. In order to determine that the state has not met its burden of proof on this element, the jury must find either that the defendant's intoxication was not the actual "but for" cause of the victim's death or that there was an "independent and efficient cause"; *State* v. *Alterio,* supra; or an intervening and efficient cause. *State* v. *Spates,* supra.

Bearing this in mind, we now turn to the evidence presented in this case to determine whether the jury could have found that the defendant's intoxication while operating the vehicle met the above described definition of proximate cause.

The evidence of causation presented in the light most favorable to sustaining the verdict is the following. Burturla testified that the defendant's pickup truck collided

with the victim's automobile in the center of the right lane, rotating the vehicles, causing the Subaru to make contact with a guardrail and then to explode with the resulting fire. There was no evidence of evasive action by the defendant and LaMorte testified that at impact the defendant's vehicle was traveling thirty-one miles per hour faster than the victim's vehicle. Expert testimony also showed that intoxicated drivers tend to drive too closely and not to perceive the speed of a vehicle, that this conduct was consistent with the defendant's operation of the vehicle and that this conduct was how the accident occurred. In addition, the state established that a person died and that the cause of death was asphyxiation that resulted from the car fire. The jury, acting within its province, evidently rejected the testimony of the defendant's accident reconstruction witness, who testified that the accident resulted from the victim's car's having just entered from the shoulder of the highway.

The jury could have reasonably concluded that the defendant's intoxication was both the actual cause and a proximate cause of the victim's death.

## II

The defendant's second claim is that the court erred in admitting into evidence the autopsy report of David Stiff, a pathologist at St. Vincent's Medical Center, who performed an autopsy on the victim on November 15, 1986.

The defendant objected to the admission of the report at trial, claiming that it was a prior consistent statement of an unimpeached witness, was irrelevant, and was unduly prejudicial. On appeal, the state argues that the report was relevant, was not unduly prejudicial, and that it was properly admitted as a business record. General Statutes §§ 52-180, 19a-411. Alternatively, the state argues that if the report was not properly admit-

ted, the court committed harmless error in this evidentiary ruling. We will first examine the issue of relevancy and then turn to its admissibility as a business record.

"At the outset, we note that trial courts have broad discretion in determining the relevancy of evidence. . . . Rulings on such matters will be disturbed on appeal only upon a showing of a clear abuse of discretion. . . . We have consistently held that 'evidence is relevant only when it tends to establish the existence of a material fact or to corroborate other direct evidence in the case.' " (Citations omitted.) *State* v. *Fritz*, 204 Conn. 156, 167–68, 527 A.2d 1157 (1987).

The report showed that the victim was a human being who was identified through the use of dental records. The report also showed that the victim died as a result of the fire that occurred right after the collision. Because this report corroborated the testimony of Stiff relating to both the identity of the victim and the cause of death, the trial court did not abuse its discretion in determining that this evidence was relevant.

The defendant also argues that even if this report is relevant, it should have been excluded because its probative value did not outweigh its prejudicial effect. We do not agree. "Mindful of the inherent difficulties of balancing probative value against prejudicial effect, we have repeatedly entrusted resolution of this determination [on the admissibility of evidence] to the sound discretion of the trial court judge." *State* v. *Tucker*, 181 Conn. 406, 416, 435 A.2d 986 (1980). "Rulings on such matters will be disturbed only upon a showing of clear abuse of discretion. *State* v. *Falcon*, 196 Conn. 557, 566, 494 A.2d 1190 (1985)." *State* v. *Boucino*, 199 Conn. 207, 225, 506 A.2d 125 (1986). The record reveals that the report was a record of the pathologist's findings. The record also reveals that the court stated that it had previously kept out two photographs because they could

have roused prejudice, but that, upon the court's review of the report, the report would not have such an effect. We cannot say that the court abused its discretion in determining that the probative value outweighed any prejudicial effect.

The defendant, relying on *State* v. *Harris,* 10 Conn. App. 217, 236–38, 522 A.2d 323 (1987), finally argues that the report should have been excluded because it was a prior consistent statement of a witness who was not impeached. The state counters that this report was properly admitted under the business records exception to the hearsay rule; General Statutes §§ 52-180, 19a-411; and that the defendant's reliance on *State* v. *Harris,* supra, is misplaced.

General Statutes § 19a-411 requires the making of an autopsy report under certain circumstances, but does not provide that this report be admitted into evidence without any preliminary testimony. Cf. General Statutes § 4-104 (permits hospital records, if not otherwise inadmissible, to be admitted into evidence without any preliminary testimony, "if there is attached thereto the certification in affidavit form of the person in charge of the record room of the hospital . . . indicating that such record or copy is the original record or a copy thereof, made in the regular course of the business of the hospital, and that it was the regular course of such business to make such record at the time of the transactions, occurrences or events recorded therein or within a reasonable time thereafter").[7] Because

---

[7] The state incorrectly cited to General Statutes § 4-104 when it argued that the report was admissible. That section applies to hospital records that are to be subpoenaed and admitted into evidence; it does not apply to autopsy reports. Furthermore, even if § 4-104 had applied, the report would not have been admissible because there was no "certification in affidavit form of the person in charge of the record room of the hospital or his authorized assistant indicating that such record or copy is . . . made in the regular course of the business of the hospital, and that it was the regular course of such business to make such record . . . ." General Statutes § 4-104.

no such exception applies in this case, the state still had to comply with the requirements of General Statutes § 52-180 in order to properly admit this report as a business record.

"For a writing to be admissible under the statute [§ 52-180], it is required to meet three qualifications: (1) It must be made in the regular course of business. (2) It must be the regular course of business to make it. (3) It must be made at or near the time of the act, transaction or event. *Szela* v. *Johnson Motor Lines, Inc.,* 145 Conn. 714, 723 [146 A.2d 910 (1958)]; Holden & Daly, Conn. Evidence § 89." *State* v. *Greenman,* 6 Conn. Cir. Ct. 160, 164, 268 A.2d 808 (1969). In other words, the trial judge must find "that [the writing] was made in the regular course of any business and that it was the regular course of such business to make such a writing or record at the time of such act, transaction, occurrence or event or within a reasonable time thereafter. It has been held that compliance with these qualifications is a prerequisite to admissibility. *Orzechowski* v. *Higgins,* 146 Conn. 463, 465 [, 152 A.2d 510 (1959)]." *State* v. *Winslow,* 2 Conn. Cir. Ct. 264, 268, 197 A.2d 778 (1963).

In this case, the state failed to lay the proper foundation and the court failed to find that the report was made in the regular course of practice of the pathologist and that it was the regular procedure for reports to be made at the time of an official autopsy. Cf. *State* v. *Damon,* 214 Conn. 146, 156–57, 570 A.2d 700 (1990); *Knox* v. *Metropolitan Life Ins. Co.,* 19 Conn. Sup. 274, 278, 111 A.2d 567 (1954).

Our inquiry does not end with·this conclusion that the admission of the autopsy report was erroneous. "It is a 'fundamental rule of appellate procedure in the review of evidential rulings, whether resulting in the admission or exclusion of evidence, that an appellant has the burden of establishing that there has been an

erroneous ruling which was probably harmful to him.' *Casalo* v. *Claro,* 147 Conn. 625, 630, [165 A.2d 153 (1960)] and cases cited." *State* v. *Greenman,* supra, 165. We now consider whether the admission of the report was so prejudicial to the rights of the defendant as to deprive him of a fair trial. See *State* v. *Magnano,* 204 Conn. 259, 285, 528 A.2d 760 (1987). "[T]he question is 'whether the claimed erroneous action of the court would have been likely to affect the result.' *State* v. *McClain,* 171 Conn. 293, 300, 370 A.2d 928 (1985)." Id. We conclude that it is not likely that the erroneous admission of the report affected the result in this case.

As previously indicated, the report merely corroborated properly admissible evidence concerning the identity of the victim and the cause of death. *State* v. *Greenman,* supra, 164; see also *State* v. *Magnano,* supra, 285–86. Further, because the jury was specifically instructed that they "should not be swayed or influenced by any sympathy or prejudice for or against any of the parties"; see *State* v. *Rodriquez,* 210 Conn. 315, 333, 554 A.2d 1080 (1989) (the jury is presumed to have followed the instructions of the court); see also *Knox* v. *Metropolitan Life Ins. Co.,* supra, 279; it cannot be said that the viewing of this report by the jury was unduly prejudicial. We are not persuaded by the defendant's claim to the contrary. Accordingly, the admission of this report was not harmful, and there is no reversible error on this issue.

### III

The defendant's third claim is that the court violated his state and federal right to confrontation protected by the sixth and fourteenth amendments to the constitution of the United States and article first, § 8, of the Connecticut constitution when it limited his cross-examination of LaMorte.[8] Specifically, the defendant

---

[8] In his brief, the defendant asked for review of this claim of error based on *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 526 (1973); see also *State*

asserts that he was denied an opportunity to inquire about the condition of the Subaru's speedometer, headlights and brakes, the manner in which different road surfaces are factored into speed formulas and driver reaction time.

At trial, LaMorte testified as an accident reconstruction expert. Her duties at the scene of the accident were to take measurements of the physical evidence found at the scene and to draw a detailed sketch map. She made certain findings and drew various conclusions regarding the paths of the vehicles and the point of contact between the vehicles. She testified that there was no physical evidence of brake marks. She also determined that the defendant was traveling thirty-one miles per hour faster than the victim at the time of the collision, but noted that, because she had used the wrong formula, she could not give her opinion as to the actual speed of the vehicles.

"The general rule is that restrictions on the scope of cross-examination are within the sound discretion of the trial judge. This discretion comes into play, however, only after the defendant has been permitted cross-examination sufficient to satisfy the sixth amendment. . . . The constitutional standard is met when defense counsel is permitted to expose to the jury the facts from which the jurors, as the sole triers of the facts and credibility, can appropriately draw inferences relating to the reliability of the witness." (Citations omitted.) *State* v. *Vitale,* 197 Conn. 396, 402, 497 A.2d 956 (1985); see *State* v. *Johnson,* 20 Conn. App. 808, 809, 567 A.2d 850

v. *Golding,* 213 Conn. 233, 240, 567 A.2d 823 (1989). *Evans* review is not necessary because the defendant took exceptions to the court's ruling sustaining the objections by the state regarding the limit of his cross-examination. Cf. *State* v. *Rawls,* 198 Conn. 111, 113–15, 502 A.2d 374 (1985).

We also note that the defendant has failed to provide any analysis to distinguish or to amplify his state right to confrontation. We decline to undertake such an analysis. *State* v. *McNellis,* 15 Conn. App. 416, 420 n.2, 546 A.2d 292, cert. denied, 209 Conn. 807, 548 A.2d 441 (1988).

(1990); *State* v. *Asherman,* 193 Conn. 695, 718, 478 A.2d 227, cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1984). In order to determine whether that cross-examination was unduly restricted, we must examine the entire cross-examination. *State* v. *Asherman,* supra, 721.

A review of the defendant's cross-examination of this witness reveals that the defendant was given every opportunity to question her about her reliability in determining the speed differential of the vehicles at impact, to expose to the jury the fact that she was not able to determine the actual speed of the two vehicles and to explore her qualifications as an expert on accident reconstruction, as well as her role in this accident. *State* v. *Fenn,* 16 Conn. App. 318, 325, 547 A.2d 576, cert. denied, 209 Conn. 822, 551 A.2d 757 (1988), cert. denied, 488 U.S. 1031, 109 S. Ct. 841, 102 L. Ed. 2d 973 (1989); see also *State* v. *Vitale,* supra, 403. On the issue of the condition of the Subaru's speedometer, headlights and brakes, the witness admitted under cross-examination that she had not examined the vehicles at the scene of the accident, and, specifically, that she did not examine the brakes of the defendant's vehicle. On the issue of the manner in which the road surfaces are factored into speed formulas, the defendant was permitted to ask numerous other questions relating to the road surface and the court noted that LaMorte had previously admitted, under both direct and cross-examination, that she was unable to determine the speed of the vehicles. The court denied the inquiry into driver reaction time because it was beyond the scope of direct examination.

Under the circumstances of this case, we cannot conclude that the defendant was denied his sixth amendment right to confrontation. See *State* v. *Vitale,* supra. This examination provided the defendant with an opportunity to "expose before the jury any facts upon

which the jury could determine the [witness'] credibility sufficient to satisfy the confrontation clause of the sixth amendment." *State* v. *Fenn,* supra, 326.

" ' "Once it is established that the trial court's ruling on the scope of cross-examination is not constitutionally defective, this court will apply '[e]very reasonable presumption . . . in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion.' *State* v. *Briggs,* 179 Conn. 328, 333, 426 A.2d 298 (1979), cert. denied, 447 U.S. 912, 100 S. Ct. 3000, 64 L. Ed. 2d 862 (1980)." *State* v. *Castro,* 196 Conn. 421, 426, 493 A.2d 223 (1985). " ' "To establish an abuse of discretion, [the defendant] must show that the restrictions imposed upon [the] cross-examination were clearly prejudicial." . . .' " ' " (Citations omitted.) *State* v. *Fenn,* supra.

The defendant argues that he was prejudiced by these restrictions because he was prevented from demonstrating that this expert failed to follow her training and experience in performing her investigation. He further asserts that causation was a pivotal issue and that LaMorte was one of only two witnesses on this issue. We are not persuaded. For the reasons previously set forth, the jurors had adequate information from which they could assess the reliability of the witness' testimony. *State* v. *Maisonet,* 16 Conn. App. 89, 96, 546 A.2d 951, cert. denied, 209 Conn. 816, 550 A.2d 1086 (1988), cert. denied, 489 U.S. 1014, 109 S. Ct. 1127, 103 L. Ed. 2d 189 (1989). Accordingly, the trial court did not abuse its discretion in restricting the cross-examination of this witness.

## IV

The defendant next contends that the trial court erred in admitting certain expert opinion testimony of the state's primary accident reconstruction witness, Burturla. The defendant asserts that this witness was

not competent to give an expert opinion on the causation element as it pertains to the tendencies of intoxicated drivers and how this accident occurred, and thus should not have been permitted to state his opinion on these ultimate facts. We do not agree.

"Whether a witness is qualified to testify as an expert with respect to a certain matter is a decision to be made by the trial court. . . . That decision will not be disturbed on appeal unless there has been an abuse of discretion or there was a clear error involving a misconception of the law. . . . Once the trial court has determined that the witness has reasonable qualifications to testify as an expert on the question presented, the objection goes to the weight rather than the admissibility of the testimony." (Citations omitted.) *State* v. *John,* 210 Conn. 652, 677, 557 A.2d 93, cert. denied, U.S. , 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989).

" ' "Generally, expert testimony is admissible if (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues." ' " *State* v. *Kennedy,* 20 Conn. App. 354, 366, 567 A.2d 841 (1989), cert. denied, 214 Conn. 805, 573 A.2d 317 (1990); *State* v. *Lamme,* 19 Conn. App. 594, 603, 563 A.2d 1372 (1989). " 'Expertise may come from practical experience or study alone.' *Bryan* v. *Branford,* 50 Conn. 246, 248 (1882)." *State* v. *Kennedy,* supra.

The defendant argues that this witness was not competent to give his expert opinion regarding the tendencies of intoxicated drivers, that such "expert" opinion did not aid the jury, and that this witness did not provide a sufficient factual basis for his opinion regarding the cause of the accident.

We first address the argument that this witness was not reasonably qualified to render an expert opinion as to the tendencies of intoxicated drivers. At trial, Burturla testified that the cause of the collision was consistent with other accidents involving intoxicated drivers. He indicated that intoxicated drivers often fail to perceive hazards, follow vehicles too closely, and tend to exaggerate their physical movements.

Burturla has been a member of the Connecticut state police for five years and was previously a member of the Trumbull police department for four years. He has a bachelor's degree in criminal justice and, when he testified, was one course short of earning his master's degree in forensic science. In addition, Burturla attended a course at the Northwestern University Traffic Institute on driving while intoxicated. Included in this course was training on the characteristics and mannerisms of intoxicated drivers. Burturla also attended a course at the Northwestern University Traffic Institute on accident investigation where the focus was on at-scene investigation, technical investigation and accident reconstruction. In terms of practical experience, Burturla has investigated over 1000 traffic accidents, many of which involved intoxicated drivers. This witness has sufficient education and practical experience regarding the tendencies of intoxicated drivers to render a competent opinion as to those tendencies.

We next turn to the argument that this witness' testimony regarding the tendencies of intoxicated drivers was not helpful to the jury in considering the issue of causation. This evidence was indeed helpful in demonstrating a proximate, legal connection between the defendant's intoxication and his striking of the victim's vehicle, which set in motion the contact between the vehicles, the victim's vehicle striking the guardrail, the resulting gas tank explosion, the car fire, and the death of the victim. It cannot be assumed that information

relating to the mannerisms and tendencies of intoxicated drivers is within the common knowledge of the average juror. *State* v. *Holeman,* 18 Conn. App. 175, 179, 556 A.2d 1052 (1989); see also *State* v. *Grayton,* 163 Conn. 104, 111, 302 A.2d 246, cert. denied, 409 U.S. 1045, 93 S. Ct. 542, 34 L. Ed. 2d 495 (1972).

The defendant also argues that the witness did not provide a sufficient factual basis for his opinion as to how this accident occurred. Specifically, the defendant argues that, because the witness could not say how fast either car was going, where the impact took place, or how the defendant's car overtook the victim's vehicle, his opinion was without substantial value. The defendant also argues that because the witness indicated during cross-examination that it was possible that the accident had occurred as a result of the victim's vehicle's crossing in front of the defendant's from the right shoulder of the highway immediately prior to the accident, he could not, with sufficient certainty, render his opinion as to the cause of the accident. We do not agree.

" ' "In order to render an expert opinion the witness must be qualified to do so and there must be a factual basis for his opinion." ' " *State* v. *John,* supra. "Where the factual basis of an expert is challenged . . . ' "the question before the court is whether the uncertainties in the essential facts and on which the opinion is predicated are such as to make an opinion based on them without substantial value." ' " Id.

We note at the outset that the defendant challenges only the factual basis for Burturla's expert opinion on how this accident occurred and not his qualifications to render an expert opinion. We conclude that the defendant's assertions that the witness was uncertain as to how fast the vehicles were traveling, where the impact took place, and how the defendant overtook the victim's vehicle were not uncertainties in essential facts

and were not facts on which the witness' opinion was predicated. We also conclude that, despite the witness' statement on cross-examination that it was possible that the victim was crossing in front of the defendant's vehicle from the right shoulder of the highway immediately before the impact, the witness testified with sufficient certainty that this fact did not occur.

Burturla testified that he responded to the accident scene approximately one hour after the accident. Upon his arrival, he observed the condition of the highway, the condition and final resting place of the vehicles, the vehicular debris and glass on the highway, and the tire marks left on the road. After observing the scene of the accident, examining the photographs taken at the scene, and examining reports made by other officers who had responded to the accident, Burturla gave the following opinion: The right front side of the defendant's truck made contact with the left rearend of the victim's Subaru causing the vehicles to rotate together. The point of initial contact between the two vehicles was the center of the right lane. The victim's Subaru made contact with a guardrail on the right side of the road. Almost immediately after this collision, the Subaru caught fire. Burturla also testified that there was no evidence that was inconsistent with his opinion.

Before he reconstructed this accident, Burturla stated that the factual bases for his opinion were his personal observations, photographs taken at the scene of the accident, the condition and final resting place of the vehicles and the placement of the vehicular debris, glass and tire marks found on the highway. Thus, the speed of the vehicles at the time of impact, the exact location where the impact took place and the precise statement of how the defendant's vehicle had overtaken the victim's vehicle were not facts essential to determining how this accident occurred and were

not facts upon which the witness predicated his opinion. Instead, these facts went to the weight of Burturla's opinion and not to its admissibility. See *State v. John,* supra, 678.

Moreover, Burturla's statement on cross-examination that it was possible that the victim's vehicle may have entered from the shoulder of the road did not render his opinion without substantial value. First, it should be noted that the witness also testified that if the victim had just entered the highway before the collision, the vehicles would have collided at different angles. Second, the witness testified that there was no evidence inconsistent with his opinion that the accident was initiated when the front of the truck made contact with the left rearend of the Subaru in the middle of the right lane. In sum, Burturla's opinion that the accident was initiated when the defendant's truck made contact with the victim's vehicle in the center of the right lane, and not when the victim's vehicle had crossed in front of the defendant's truck from the shoulder of the highway was made with sufficient certainty and was factually supported. Burturla was not required to state with absolute certainty that there were no other possible causes to the accident. See *State v. John,* supra, 677.

Burturla had the benefit of his own observation of the physical evidence at the scene, photographs and reports to enable him to form an opinion that the Subaru was not entering the right lane from the shoulder of the road before the impact but was, in fact, in the center of the right lane. Because this witness' opinion as to how the accident was initiated was given with sufficient certainty and was factually supported, we conclude that the trial court did not abuse its discretion in admitting the expert opinion of this witness as to how the accident had occurred.

Accordingly, the trial court did not abuse its discretion in permitting the expert testimony of this witness on the issue of causation.

## V

The defendant's fifth claim is that the trial court's instructions to the jury on the requirement of reasonable doubt impermissibly lowered the burden of proof required for conviction, in violation of his due process rights.

The defendant cites as erroneous the following language from the jury charge: "In this case, the evidence must exclude all other reasonable *probabilities* as to the cause of the vehicular accident other than the alleged intoxication of the defendant." (Emphasis added.) He argues that the court impermissibly lowered the burden of proof on the element of causation when it instructed the jury that "the evidence must exclude all other reasonable probabilities, rather than 'possibilities.' " The defendant argues that, because of this error, the charge as a whole was confusing to the jury.[9] We do not agree.

"A jury instruction is to be examined in its entirety and its correctness tested by whether the charge as a whole presents the case to the jury so that no injustice will be done. ' " 'A charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case.' " ' " *State* v. *Butler,* 207 Conn. 619, 633, 543 A.2d 270 (1988). " ' "An erroneous instruction, even of constitutional

---

[9] The defendant requested review of this claim under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 526 (1973); see also *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989); because he did not object to or take exception to the charge at issue. We need not undertake *Evans* review because this claim was properly preserved in view of the fact that the alleged error was on the defendant's written request to charge. See Practice Book § 315.

dimension, is harmless if, viewed in the context of the charge as a whole, there is no reasonable probability that the jury was misled.'' ' '' *State* v. *Delosantos,* 13 Conn. App. 386, 391, 536 A.2d 609 (1988).

The court began its charge to the jury with a definition of reasonable doubt that the defendant, in his brief, concedes was proper. The court also began its instruction on the element of causation by instructing the jury that ''[t]he third element the state must prove *beyond a reasonable doubt* is that the defendant caused the death of Pamela Simmons as a consequence of his intoxication.'' (Emphasis added.) Then, following the allegedly erroneous use of the word ''probabilities,'' the court reviewed the evidence that was presented on the issue of causation and instructed the jury that ''[w]hen as here there is some evidence from which you might conclude that the vehicular accident was caused by some factors, other than the defendant's intoxication, *the state must prove to you beyond a reasonable doubt that none of these factors could have caused the accident.''* (Emphasis added.) Furthermore, the trial court concluded its instruction on the charge of second degree manslaughter with a motor vehicle by stating to the jurors that ''[i]f the state has proved *all of three elements of the crime beyond a reasonable doubt* you shall bring in a verdict of guilty on the first count. If the state has failed to prove *all of the elements beyond a reasonable doubt* you shall bring in a verdict of not guilty on the first count.'' (Emphasis added.)

Examining the charge as a whole, we conclude that it is not reasonably possible that the jury was misled. The trial court's use of the word ''probabilities'' was, at most, ''an inadvertent slip of the tongue.'' *State* v. *Delosantos,* supra. Any error in the trial court's charge was harmless.

There is no error.

In this opinion the other judges concurred.