ANNE F. YOUNG ET AL. *v.* MICHAEL FALK ET AL.
(12430)

LAVERY, SPEAR and CRETELLA, Js.

Argued March 25—decision released June 28, 1994

*David J. O'Dea,* with whom were *Donald R. Beebe* and, on the brief, *Thomas Norton,* for the appellants (plaintiffs).

*Brendan T. Flynn,* with whom, on the brief, was *Robert L. Hirtle, Jr.,* for the appellees (defendants).

LAVERY, J. The plaintiffs[1] appeal from the judgment of the trial court accepting the jury's verdict in favor of the defendants in the plaintiffs' chiropractic malpractice suit.[2] On appeal, the plaintiffs claim that the trial court improperly charged the jury and refused to set aside the jury's verdict. We affirm the judgment of the trial court.

In June, 1987, Anne Young, the named plaintiff, sought chiropractic treatment from the defendant to alleviate intermittent dizziness, vertigo and soreness in her neck and shoulders. Over a period of twelve days, the defendant treated her several times with cervical manipulation, cervical traction, massage and ultrasound. After her condition did not improve, the named plaintiff consulted a neurologist who recommended against further chiropractic treatment. She returned, however, to the defendant two days later for further treatment. On that occasion, the defendant used only cervical traction, not manipulation. Approximately thirty-six hours later, the named plaintiff suffered a brain stem stroke that left her unable to work or to drive a car.

[1] The plaintiffs in this action are Anne F. Young, the patient, and her husband, Paul A. Young.

[2] The defendants in this action are Michael Falk and Falk Chiropractic Services. For the purposes of this opinion, the term defendant refers to Michael Falk.

The complaint alleged that the defendant had been negligent in testing, diagnosing and treating the named plaintiff. Specifically, the plaintiffs asserted that the defendant had (1) failed to conduct and record properly a test used to determine whether a patient has a high risk of a stroke, (2) misdiagnosed her condition and used contraindicated treatments, and (3) failed to warn her about the risks and obtain informed consent to the procedures.

The plaintiffs also sued Susan Falk, the defendant's wife, alleging that the defendant fraudulently transferred his interest in his office building to his wife after learning of the plaintiffs' suit. They also claimed that the transfer evidenced the defendant's consciousness of guilt. The claims against Susan Falk were severed. The remaining claims were tried to a jury, which found in favor of the defendant.

I

The plaintiffs first claim that the trial court improperly failed to give the requested charge of falsus in uno, falsus in omnibus. The term *falsus in uno, falsus in omnibus* (false in one thing, false in everything) refers to the prerogative of the jury to discredit all of a witness' testimony if the jury finds that the witness has testified falsely in some respect. *State* v. *Smith,* 201 Conn. 659, 666, 519 A.2d 26 (1986). The plaintiff had requested that the trial court give this charge to the jury.[3] The court did not charge as requested. The trial

[3] This request had its basis in disputed evidence that the defendant had altered some entries on his patient notes after suit had been commenced. The defendant testified about the changes and denied making any material changes. The plaintiff requested that the trial court charge the jury as follows: "Likewise you can consider whether or not the defendant changed his office records. If you find that the defendant made a false statement by changing his office records, then you can disregard his entire testimony. The legal maximum [sic] in Latin states: Falsus in uno, falsus in omnibus which translates as: False in one thing, false in everything. The

court did, however, explain to the jurors that they could believe all, some or none of a witness' testimony.[4] The court stated clearly that the jury alone determined the credibility of witnesses and what testimony to believe.

"The maxim falsus in uno, falsus in omnibus in its permissive form has been approved in this state as an instruction to the jury in relation to their determination of the credibility of witnesses. . . . The approved instruction deals with the weight and credibility of testimony and not with the competency of witnesses. It serves as an aid to the jury in weighing and sifting the evidence. It is not a mandate to disregard all testimony of a witness who has been found to have wilfully or knowingly testified falsely as to any material fact although that was its literal meaning and original purpose. . . . It has long been an established legal principle in this state that the trier of fact has the right to accept part and disregard part of the testimony of a witness. . . . Under the proper instruction the jury may or may not, as they see fit, reject all the testimony of the witness, and act on their own judgment as to the value and credibility of the testimony. . . . *Under the general instructions by the court relating to the credibility of witnesses, the jury are similarly advised even if in fact the maxim is not called to their attention.* . . . Instruction on the maxim is a matter rest-

doctrine means that if the testimony of a witness on a material issue is willfully false and given with intention to deceive, the jury may disregard all the witness' testimony."

[4] In this regard the trial court charged the jury as follows: "Now, in connection with finding the true facts is the question of the credibility of witnesses. You and you alone decide that. You can believe anything a witness said, nothing a witness said, believe some things and not other things. You consider their connection with the case, whether they are a party, whether they are truly independent, whether they have been retained by somebody to testify, whether they are friends or relatives. Whatever their interest might be in the outcome of the case is to be considered by you in determining their credibility and whether or not you accept as truthful and accurate their testimony."

ing in the sound discretion of the trial judge." (Citations omitted; emphasis added.) *Raia* v. *Topehius,* 165 Conn. 231, 234–36, 332 A.2d 93 (1973).

"A jury charge is to be considered from the standpoint of its effect on the jury in guiding it to a correct verdict. . . . The charge is to be read as a whole, with the instructions claimed to be improper read in that context. . . . A reviewing court does not critically dissect the charge to discover possible inaccuracies. . . . The test to determine if a jury charge is proper is whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Jury instructions need not be exhaustive, perfect or technically accurate, so long as they are correct in law, adapted to the issues and sufficient for the guidance of the jury." (Citations omitted; internal quotation marks omitted.) *Lynch* v. *Granby Holdings, Inc.,* 32 Conn. App. 574, 580, 630 A.2d 609, cert. granted, 228 Conn. 913, 635 A.2d 1230 (1993).

Our review of the charge as given persuades us that it fairly presented the case to the jury in a way that injustice was not done to either party under the established rules of law.

## II

The plaintiffs next claim that the trial court improperly commented on the evidence in its charge to the jury. The plaintiffs requested a charge on the defendant's consciousness of liability.[5] Although not in the language requested, the trial court did instruct the jury

[5] The plaintiffs requested that the trial court charge on this issue as follows: "The rule is well established that when a defendant after the happening of an accident or the occurrence of some other event which might render him liable, disposes of his property for no consideration (or payment) the jury may consider that transfer as proof that the defendant was conscious of his liability."

that if a defendant disposes of property for no consideration after an event that might render the defendant liable, that disposition of property can be considered proof of the defendant's consciousness of liability.[6] The court also noted the defendant's explanation for his transfer of property to his wife. The plaintiffs claim that this part of the charge improperly interfered with the province of the jury by impermissibly bolstering the defendant's credibility.

The defendant asserts that this claim was not properly preserved for appeal. In order to preserve full appellate review of a jury charge assigned as error, the plaintiffs must (1) have either (a) requested the court to charge on the topic or (b) objected to the charge as given; Practice Book § 315; *State* v. *Kwaak,* 21 Conn. App. 138, 160 n.9, 572 A.2d 1015, cert. denied, 215 Conn. 811, 576 A.2d 540 (1990); and (2) moved to set aside the verdict. *Budlong* v. *Nadeau,* 30 Conn. App. 61, 65, 619 A.2d 4, cert. denied, 225 Conn. 909, 621 A.2d 290, cert. denied,     U.S.    , 114 S. Ct. 62, 126 L. Ed. 2d 31 (1993); *Cuartas* v. *Greenwich,* 14 Conn. App. 370, 374, 540 A.2d 1071, cert. denied, 209 Conn. 803, 548 A.2d 436 (1988). "This rule is essential in order to prevent a judicial game of pin-the-tail-on-the-claim-of-error." *Cuartas* v. *Greenwich,* supra, 375.

In this instance, the plaintiffs did not object to the trial court's reference to the defendant's explanation

---

[6] The trial court charged the jury on this subject as follows: "The claim has been made, and I have to tell you what the law is, that when a defendant, after the happening of an accident or the occurrence of some other event which might render him liable, disposes of his property for no consideration or payment, the jury may consider that transfer as proof that the defendant was conscious of his liability.

"Now, the word there is the jury 'may' consider it. You don't have to consider it. As I recall, there was an explanation made by Dr. Falk that he did it for tax purposes. So, if you feel that's what the reason was, then you don't consider that as proof of consciousness of liability. Its up to you how you interpret that act that was done."

for disposing of his property. Although the plaintiffs did raise the issue in their motion to set aside the judgment, that alone is insufficient. See Practice Book § 315. The purpose of the rule is to provide the trial court with an opportunity to cure any defects or ambiguities in the charge while that can still occur without retrial. See *Thomas* v. *Katz,* 171 Conn. 412, 414, 370 A.2d 978, 980 (1976). Because the plaintiffs did not object after the charge, their claim is not properly preserved.

Where a claim of improper jury charge has not been preserved in the trial court, we are limited in our review to whether the trial court committed plain error. *Budlong* v. *Nadeau,* supra, 30 Conn. App. 65. Plain error exists only in "truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." Id., 66.

Our review of the charge leads us to conclude that the trial court's reference to the defendant's explanation was not plain error. In fact, it was not error. Although "a trial court has not only the right but often the duty to comment upon the evidence . . . [i]nstructions should not . . . direct the attention of the jury too prominently to the facts in the testimony on one side of the case, while sinking out of view, or passing lightly over the portions of the testimony on the other side . . . ." *Bruneau* v. *Quick,* 187 Conn. 617, 628, 447 A.2d 742 (1982). By reminding the jury of the defendant's explanation, the trial court properly presented both sides of the issue of consciousness of guilt and did not overstep its bounds.

### III

The plaintiffs next claim that the trial court improperly failed to charge on some of their allegations of negligence. The plaintiffs alleged that the defendant

had been negligent in his treatment of the named plaintiff in eleven different ways, including negligent diagnosis, treatment, testing, monitoring, warning, failure to obtain consent, and failure to follow proper procedures. The plaintiffs requested a charge on negligence that highlighted each separate negligence accusation.[7] Although not in the plaintiffs' language, the trial court charged the jury that the defendant stood accused of negligent diagnosis, treatment, failure to warn, failure to obtain consent, and failure to follow proper procedures.[8]

---

[7] The plaintiffs requested that the trial court charge on this issue as follows: "The claims are that Dr. Falk from June 12, 1987 through June 24, 1987 in endeavoring to treat Anne Young did not exercise the degree of care or skill ordinarily exercised by chiropractors in one or more of the following particulars: (a) He failed to properly and/or timely diagnose the condition that the plaintiff, Anne F. Young, had; and/or (b) He attempted to treat the plaintiff, Anne F. Young, with procedures that were detrimental to her health; and/or (c) He failed to perform proper preliminary tests before performing the procedures on her; and/or (d) he was not aware, although he should have been aware, of the probable complications that his procedures could and/or would have on the Plaintiff, Anne F. Young, including but not limited to, the physical and related problems that the plaintiff now has; and/or (e) He failed to warn the Plaintiff, Anne F. Young, of the risks of the procedures that he was to perform and/or did perform on the Plaintiff, Anne F. Young; and/or (f) He failed to follow standard chiropractic procedures and testing in the treatment and care of the Plaintiff, Anne F. Young; and/or (g) He failed to follow standard medical procedures and testings in the treatment and care of Anne F. Young; and/or (h) He failed to obtain the informed consent of the Plaintiff, Anne F. Young, before performing chiropractic manipulations on her; and/or (i) He failed to conduct proper diagnostic testing; and/or (j) He failed to properly monitor the patient while treating her; and/or (k) He failed to correct any one or more of the above errors."

[8] The trial court charged the jury on this issue as follows: "Now, if you find that the plaintiff proved a standard of care . . . the next thing the plaintiff must also prove by expert testimony is that there was a violation of this standard of care in one or more of the ways alleged in the complaint . . . . And I'll read those allegations at this time. The plaintiff claims that the defendant attempted to treat the plaintiff Anne Young from June 12, 1987 through on or about June 24, 1987 and, endeavoring to treat her, did not exercise the degree of care or skill ordinarily exercised by chiropractic physicians in their professions in one or more of the following

The defendant asserts that this claim was also not properly preserved for appeal. As noted previously, full appellate review of a jury charge assigned as error is available only if the appellant (1) either (a) requested the court to charge on the topic or (b) objected to the charge as given; Practice Book § 315; *State* v. *Kwaak,* supra, 21 Conn. App. 160 n.9; and (2) moved to set aside the verdict. *Budlong* v. *Nadeau,* supra, 30 Conn. App. 65; *Cuartas* v. *Greenwich,* supra, 14 Conn. App. 374. In this instance, however, the plaintiffs submitted a proper request to charge and raised the issue in their motion to set aside the verdict. Thus, the claim is preserved for our review.

"It is not error for a trial court to charge the jury in language other than that submitted by the parties. Although the court did not charge in the exact language, [e]rror cannot be predicated on a failure to adopt the particular language of a request to charge where the matter is adequately and fairly covered in the charge. . . . A charge must be read as a whole; the test is not whether it is exhaustive, letter perfect or technically accurate . . . but whether the charge as a whole fairly presented the case so that no injustice was done." (Citations omitted; internal quotation marks omitted.) *Rogers* v. *Delfino,* 13 Conn. App. 725, 728, 539 A.2d 156 (1988); see also *Mazzucco* v. *Krall Coal & Oil Co.,* 172 Conn. 355, 357, 374 A.2d 1047 (1977).

Although the trial court did not use the plaintiffs' exact language, the charge did cover the plaintiffs' alle-

ways or particulars: He failed to properly and/or timely diagnose the condition that the plaintiff Anne Young had; and/or he attempted to treat the plaintiff Anne F. Young with procedures that were detrimental to her health; and/or he failed to warn the plaintiff Anne F. Young of the risks of the procedures that he was about to perform on the plaintiff Anne F. Young; and/or he failed to follow standard chiropractic procedures and testings in the treatment and care of the plaintiff; and finally, he failed to obtain the informed consent of the plaintiff Anne F. Young before performing chiropractic manipulations upon her."

gations adequately and fairly. Our comparison of the request and the charge persuades us that the charge fairly presented the case and that no injustice was done.

## IV

The plaintiffs next claim that the trial court improperly refused to set aside the verdict as contrary to the evidence. They assert that they presented evidence from which a reasonable jury could conclude only that the defendant was negligent, that his negligence was the proximate cause of the named plaintiff's injuries, and that he testified falsely and was conscious of his liability. Conversely, the defendant argues that sufficient evidence was adduced to support the jury's verdict.

"The function of the trial court in setting a verdict aside, and the role of this court in reviewing that action, are well settled. The trial court possesses inherent power to set aside a jury verdict which, in the court's opinion, is against the law or the evidence. . . . The trial court should not set a verdict aside where there was some evidence upon which the jury could reasonably have based its verdict . . . . Ultimately, [t]he decision to set aside a verdict entails the exercise of a broad legal discretion . . . . Limiting that discretion, however, is the litigants' constitutional right to have issues of fact determined by a jury where there is room for a reasonable difference of opinion among fair-minded jurors. . . ." (Citations omitted; internal quotation marks omitted.) *American National Fire Ins. Co.* v. *Schuss,* 221 Conn. 768, 774, 607 A.2d 418 (1992).

"This court's inquiry focuses on the action of the trial court . . . . We determine whether the trial court abused its broad discretion, according great weight to the action of the trial court and indulging every reasonable presumption in favor of its correctness . . . because the trial court, unlike this court, has had the

opportunity to view the witnesses, to gauge their credibility and the weight of their evidence, and to detect those factors, if any, that could improperly have influenced the jury. . . . In doing so, we must examine the evidential basis of the verdict itself to determine whether the trial court abused its discretion." Id., 774–75.

Central to this claim is the plaintiffs' assertion that the evidence presented at trial could only support the conclusion that the plaintiff's stroke resulted from the defendant's treatment. The plaintiffs' own experts testified, however, that the stroke could have resulted from other causes. Further, the defendant's expert testified that the length of time between the last treatment and the stroke indicated that there was no causal connection.

Our review of the testimony and evidence adduced at trial persuades us that a sufficient evidentiary basis existed to support the jury's verdict. Therefore, the trial court did not abuse its discretion in refusing to set aside the verdict.

V

Finally, the plaintiffs claim that the trial court improperly refused to instruct the jury that contributory negligence was not applicable to the action. The named plaintiff consulted a neurologist prior to her final treatment from the defendant. The neurologist advised her not to permit the defendant to manipulate her neck again. She returned for further treatments, however, and permitted the defendant to manipulate her neck. The plaintiffs sought to have the trial court instruct the jury that the named plaintiff's conduct could not be viewed as evidence of negligence.

The defendant did not plead contributory negligence as a special defense. "A plaintiff . . . may not claim

as error the trial court's refusal to grant a request to charge on any issue not reasonably given rise to by the pleadings." *Krattenstein* v. *Thomas,* 7 Conn. App. 604, 610, 509 A.2d 1077, cert. denied, 201 Conn. 807, 515 A.2d 378 (1986). "A jury can only be confused and misled by interjecting into their deliberations a doctrine inapplicable to the evidence as a matter of law." *Faulkner* v. *Reid,* 176 Conn. 280, 281, 407 A.2d 958 (1978). Therefore, the trial court properly refused to charge as requested.

The judgment is affirmed.

In this opinion the other judges concurred.