## STATE OF CONNECTICUT *v.* DONALD PARSONS (10200)

O'CONNELL, FREEDMAN and CRETELLA, Js.

Argued April 7—decision released June 30, 1992

*Paul E. Zagorsky,* for the appellant (defendant).

*Jack W. Fischer,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Stephen G. Preleski,* assistant state's attorney, for the appellee (state).

FREEDMAN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of three counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a), three counts of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1), two counts of risk of injury to a child in violation of General Statutes § 53-21, and a single count of promoting a minor in an obscene performance in violation of General Statutes § 53a-196b (a).[1] The trial court imposed a total effective sentence of forty-six years, execution suspended after twenty-nine years with five years of probation and the defendant received an unconditional discharge on the conviction for promoting a minor in an obscene performance.

[1] The jury found the defendant not guilty of additional charges of sexual assault in the second degree and risk of injury to a child.

The defendant claims that the trial court improperly (1) denied his pretrial motion to dismiss three of the eleven counts charged by the state, (2) charged the jury with respect to the date of all charged offenses, (3) denied his motion for judgment of acquittal, (4) charged the jury on promoting a minor in an obscene performance, (5) permitted the state to ask leading questions of the minor victims on direct examination, and permitted one of the minor victims to read from a prior statement on direct examination, (6) permitted eight witnesses to testify for the state under the constancy of accusation exception to the hearsay rule where the cumulative prejudicial effect of their testimony outweighed its probative value, and (7) admitted into evidence twenty-five photographic enlargements of pictures taken by the defendant when the prejudicial effect of such enlargements outweighed their probative value. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. The two female victims, V, born in July, 1978, and C, born in December, 1979, are the defendant's stepchildren. V and C's mother, who is the wife of the defendant, also had three other children by the defendant, including a son, D, born in August, 1984. Toward the end of January and beginning of February, 1989, the victims' mother began attending real estate classes, which met on six successive Saturdays from 9 a.m. to 4 p.m. She would also leave the house at least one night during the week to study. After spending additional time out of the house to take the real estate examination, the victims' mother began work in a local real estate office. She worked three or four nights a week from 5 p.m. until 8 or 9 p.m., a three hour shift on alternate Saturdays, and an occasional shift on Sunday afternoons. During the mother's absence from the house, the defendant would stay at home with the children.

Beginning in February, 1989, when their mother attended the real estate classes, the defendant started showing V and C pornographic pictures in magazines, which he told them were normal. He then began having V take her clothes off, and sometimes he took his off too. Finally, one evening in May, 1989, and several times thereafter, the defendant sexually assaulted V and C, and also involved them in other bizarre acts. On one occasion, D walked into the room while the defendant was sexually assaulting V, and the defendant told D to remove his clothes. The defendant then fondled D's penis. The victims did not tell anyone what the defendant was doing to them because he told them not to tell, and threatened to harm them if they did.

In June or July, 1989, the children's mother arrived home from work to find V and C "scurrying" from the kitchen or the living room "to get on bathrobes and they were both completely naked underneath." The defendant was present at this time. When she asked what was going on, they replied, "Oh nothing." D was also present, but, when he attempted to respond to his mother's question, the defendant told him to be quiet. The mother continued to work at her job through the summer and fall of 1989.

On December 10, 1989, the children's mother attended a church service during which a sermon about guilt and hidden feelings was given. Knowing that some of her jewelry was missing at home, she returned home and gave a lecture about guilt and hidden feelings to her children. In response, V hesitantly told her mother that the defendant was sexually assaulting her. When the mother confronted the defendant with V's accusations, he denied them. V stated that her accusations were true, and C also told her mother that the accusations were true.

The defendant was eventually arrested on December 12, 1989. The victims, who told the police about the assaults, were then taken to a local hospital and were interviewed and examined. During a subsequent search of the defendant's home after his arrest, the police found a photographic contact sheet containing numerous photographs, taken by the defendant, of V. V was clothed only in a T-shirt, and the photographs focused primarily on her buttocks. The police also discovered pornographic magazines, at least one of which was admitted into evidence. Additional facts that are pertinent to a discussion of the issues presented in this appeal will be presented as necessary.

## I

The defendant's first claim can be divided into two parts. He claims that the trial court improperly (1) denied his motion to dismiss the eleventh count, promoting a minor in an obscene performance, because prosecution for that offense was barred by the statute of limitations, and (2) denied his motion to dismiss the eleventh count and two of the risk of injury counts because of a lack of specificity in the state's bill of particulars regarding the time of occurrence of the alleged offenses.

## A

The defendant claims that because the statute of limitations, as set forth in General Statutes § 54-193, barred a prosecution under General Statutes § 53a-196b, the trial court improperly denied his motion to dismiss that count.

The statute of limitations, General Statutes § 54-193 (b) provides in pertinent part: "No person may be prosecuted for any offense . . . for which the punishment is or may be imprisonment in excess of one year, except within five years next after the offense

has been committed." Promoting a minor in an obscene performance is a class B felony. General Statutes § 53a-196b (c). The punishment for that offense may be imprisonment for more than one year; General Statutes § 53a-25; and therefore a prosecution must be commenced within five years from the date of its occurrence to satisfy § 54-193 (b).

On January 15, 1991, the state filed an amended information which for the first time charged the defendant with a violation of § 53a-196b, promoting a minor in an obscene performance.[2] The basis of this charge was the photographs of the partially clad victim. In its bill of particulars, the state alleged that the defendant had committed this offense "on or about 1986 or 1987." Had the offense occurred in the first two weeks of January, 1986, therefore, the defendant could have precluded prosecution for that offense by affirmatively raising a statute of limitations defense.

The statute of limitations, General Statutes § 54-193, is not a jurisdictional bar to prosecution, but rather is an affirmative defense which must be proved by the defendant by a preponderance of the evidence. General Statutes § 53a-12 (b); *State* v. *Crawford,* 202 Conn. 443, 451, 521 A.2d 1034 (1987); *State* v. *Coleman,* 202 Conn. 86, 90, 521 A.2d 1034 (1987); *State* v. *Littlejohn,* 199 Conn. 631, 640, 508 A.2d 1376 (1986). "An affirmative defense is presented in the orderly course of a criminal trial after the prosecution has presented its case-in-chief." *State* v. *Coleman,* supra, 91.

Here, the defendant raised the statute of limitations by way of a motion to dismiss. After the trial court denied the motion, however, the defendant failed to

---

[2] The facts underlying this charge were not contained in the affidavit in support of the arrest warrant application. The issuance of the warrant, therefore, did not toll the running of the statute of limitations with respect to this offense. See *State* v. *Almeda,* 211 Conn. 441, 446–47, 560 A.2d 389 (1989).

raise the defense at trial and he failed to submit a request to charge thereon. "The fact that the trial court, in its discretion, entertained the defendant's motion to dismiss prior to trial does not automatically convert an affirmative defense into a right to be free of the trial itself. As an affirmative defense, the statute of limitations provides the defendant with a shield, not against prosecution itself, but against successful prosecution." Id. Because of the overlap between the time of occurrence alleged in the bill of particulars and the statute of limitations, we cannot conclude that the trial court improperly denied the defendant's motion at that time. The state, through the testimony of the children's mother, then presented evidence at trial from which the jury could conclude that the pictures were taken in 1986 or 1987. It then became the defendant's burden to prove his defense, by a preponderance of the evidence at trial; because the defendant failed to meet his burden, he cannot prevail on appeal.

B

The defendant also claims that the trial court improperly failed to dismiss the eleventh count and two risk of injury counts because the time frame referred to in those counts was so broad and indefinite that it deprived him of his state and federal constitutional rights to be informed of the nature and cause of the accusations against him.[3] As previously stated, the state charged that the defendant committed a violation of § 53a-196b "on or about 1986 or 1987." With respect to the two risk of injury counts, the state alleged that they were committed "between February, 1989 and December 7, 1989."

"In order to enable the defendant to prepare his defense, the state must inform him, within reasonable

---

[3] Because the defendant failed to present separate and independent analysis of his state constitutional claim, he is not entitled to review on that basis. *State* v. *Steiger,* 218 Conn. 349, 358 n.9, 590 A.2d 408 (1991).

time limits, when the offense charged was alleged to have been committed." (Internal quotation marks omitted.) *State* v. *Mancinone,* 15 Conn. App. 251, 257, 545 A.2d 1131, cert. denied, 209 Conn. 818, 551 A.2d 757 (1988). The sixth amendment to the United States constitution does not require that the state choose a particular moment as the time of an offense when the best information available to the state is imprecise. Id. "In order for a defendant who is convicted on the basis of an imprecise information to prevail on appeal, he must establish 'a clear and specific showing of prejudice to the defense . . . .' *State* v. *Hauck,* [172 Conn. 140, 150, 374 A.2d 150 (1976)]; see *State* v. *Laracuente,* 205 Conn. 515, 518–21, 534 A.2d 882 (1987). Such a showing amounting to a deprivation of his constitutional right to adequate notice of the charges is not made, however, merely by establishing that the 'presentation of his . . . defense may be more burdensome and difficult.' *State* v. *Evans,* [205 Conn. 528, 536, 534 A.2d 1159 (1987)]; *State* v. *Saraceno,* [15 Conn. App. 222, 237, 545 A.2d 1116 (1988)]." *State* v. *Mancinone,* supra, 258.

"[W]here time is not of the essence or gist of the offense, the precise time at which it is charged to have been committed is not material." *State* v. *Laracuente,* supra, 519. The defendant admits that time is not of the essence to the crimes of risk of injury or promoting a minor in an obscene performance. At the hearing on his motion to dismiss, as well as in his brief to this court, the defendant has done no more than make mere assertions that the time frames alleged prejudiced his defense, and that the state could have narrowed the time frame. The state, however, indicated that the risk of injury counts encompassed the acts constituting the sexual assault counts, which occurred on various dates between May and August, 1989, plus other, uncharged prior sexual encounters occurring in the early months

of 1989. As for the eleventh count, promoting a minor in an obscene performance, the evidence at trial made it clear that the state could not give a more specific date because the best evidence it had was the mother's testimony, in which she stated that the pictures must have occurred sometime when V was eight years old, which was in 1986 and 1987.

Because the state could not narrow the time frames, and because the defendant failed to make a clear and specific showing of prejudice, he cannot prevail on this claim.

## II

The defendant next claims that the trial court improperly instructed the jury as to the state's burden of proof concerning the time of occurrence of the offenses. The challenged part of the instructions, which was taken almost verbatim from the state's request to charge, is as follows: "Now in various counts of the information as particularized by the bill of particulars, the various charges are given—said to have occurred say in May or on a particular date. In our state, the state may allege that a crime or crimes were committed on or about a particular date or a particular period of time. In Connecticut, it is well settled that the crime or crimes charged need not be proven to have occurred on the precise date stated in the information or during the precise period stated in the information. It's sufficient ordinarily for the prosecution to prove the commission of the crime charged occurred at any time prior to the date of the information that's when these proceedings started and not have occurred so long ago as to be barred by the statute of limitations."

The instruction, as given, is an accurate statement of the law in Connecticut and the defendant does not claim otherwise. See *State* v. *Cates*, 202 Conn. 615, 626, 522 A.2d 788 (1987). Rather, he merely restates his

earlier claim that he was prejudiced by the lack of specificity contained in the state's charging documents, a claim that we have already rejected. "A request to charge which is relevant to the issues of the case and which is an accurate statement of the law must be given. . . ." (Internal quotation marks omitted.) *State v. Fernandez,* 27 Conn. App. 73, 87, 604 A.2d 1308 (1992), quoting *State v. Jennings,* 216 Conn. 647, 663, 583 A.2d 915 (1990). We conclude that it was not improper for the trial court to give the challenged instruction.

## III

The defendant's third claim is that the trial court improperly denied his motions for judgment of acquittal on the eleventh count, made at the close of the state's case-in-chief and at the close of the trial. Specifically, the defendant argues that the trial court should have granted these motions because the state failed to produce evidence of the community standards regarding what is obscene as to minors.

Section 53a-196b (a) provides: "A person is guilty of promoting a minor in an obscene performance when he knowingly promotes any performance or material in which a minor is employed, whether or not such minor receives any consideration, and such performance or material is obscene as to minors notwithstanding that such performance or material is intended for an adult audience." "Material or a performance is 'obscene as to minors' if it depicts a prohibited sexual act and, taken as a whole, it is harmful to minors. For purposes of this subsection: (1) 'Minor' means any person . . . less than sixteen years old as used in sections . . . 53a-196b . . . and (2) 'harmful to minors' means that quality of any description or representation, in whatever form, of a prohibited sexual act, when (A) it predominantly appeals to the pru-

rient, shameful, or morbid interest of minors, (B) it is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable material for minors, and (C) taken as a whole, it lacks serious literary, artistic, educational, political or scientific value for minors." General Statutes § 53a-193 (b). " 'Prohibited sexual act' means erotic fondling, nude performance, sexual excitement, sado-masochistic abuse, masturbation or sexual intercourse." General Statutes § 53a-193 (c). " 'Nude performance' means the showing of the human male or female genitals, pubic area or buttocks with less than a fully opaque covering . . . ." General Statutes § 53a-193 (d). " 'Promote' means to manufacture, issue, sell, give, provide, lend, mail, deliver, transfer, transmit, publish, distribute, circulate, disseminate, present, exhibit, advertise, produce, direct or participate in." General Statutes § 53a-193 (*l*).

The language of General Statutes § 53a-193 (b), subdivisions (2) (A), (B) and (C), which define "obscene as to minors," essentially tracks the three prong test for obscenity as set forth in *Miller* v. *California,* 413 U.S. 15, 93 S. Ct. 2607, 37 L. Ed. 2d 419 (1973). In the companion case to *Miller, Paris Adult Theatre I* v. *Slaton,* 413 U.S. 49, 93 S. Ct. 2628, 37 L. Ed. 2d 446 (1973), the Supreme Court expressly addressed the issue of the need for expert testimony when the allegedly obscene material has been put into evidence. The Supreme Court concluded that it was not error "to fail to require 'expert' affirmative evidence that the materials were obscene when the materials themselves were actually placed in evidence. . . . The [materials], obviously, are the best evidence of what they represent. 'In the cases in which this court has decided obscenity questions since *Roth* [v. *United States,* 354 U.S. 476, 77 S. Ct. 1304, 1 L. Ed. 2d 1498 (1957)] it has regarded

the materials as sufficient in themselves for the determination of the question.' " (Citations omitted.) *Paris Adult Theatre I* v. *Slaton,* supra, 56.

In *State* v. *Gagliardi,* 174 Conn. 46, 381 A.2d 1068 (1977), our Supreme Court made it clear that the state must establish each and every one of the *Miller's* essential elements, including the community standards, before a defendant can be found guilty of an obscenity conviction.[4] The court also recognized that when the allegedly obscene materials were brought before the court, as in the present case, the factfinder is able to determine for itself whether the performance or material is obscene without the use of expert affirmative evidence. Id., 49. The court in *Gagliardi* held, however, that because the allegedly obscene performance in that case was not presented to the court, the state had the burden of offering evidence to show that it was obscene under community standards. Id.

It is clear, therefore, that because in the present case the state introduced the allegedly obscene pictures of the minor child into evidence, no expert testimony concerning whether they are in fact obscene, or what the community standards may be, was necessary. It is for the jury to decide whether the photographs satisfy the requirements of the three pronged *Miller* obscenity test as adopted and codified in General Statutes § 53a-193 (b) (2). *Paris Adult Theatre I* v. *Slaton,* supra. Thus, the defendant's claim must fail.

## IV

The defendant also claims that the trial court improperly instructed the jury on the charge of promoting a

---

[4] In *State* v. *Gagliardi,* 174 Conn. 46, 381 A.2d 1068 (1977), the defendant was convicted of a violation of General Statutes § 53a-194, promoting an obscene performance. Id., 48. The defendant had permitted a woman to perform a striptease dance at a bachelor party held in the rear of his cafe. Id., 47.

minor in an obscene performance. The defendant appears to complain that the trial court gave the definition of "obscene," as contained in General Statutes § 53a-193 (a), but failed to give the jury the definition of "obscene as to minors," as contained in General Statutes § 53a-193 (b), which is a necessary element of the crime charged. He also claims that "the jury was left with the impression that if they, as adults in the community of Connecticut feel it's obscene, there is no obligation on the State to prove the three prongs of section 53a-193 (b) (2), specifically subsections (A), (B) and (C)." These claims are without merit.

The defendant correctly states that the trial court gave the jury the definition of "obscene" as contained in General Statutes § 53a-193 (a). That definition was correct as given, and was given by the trial court in its general description of the elements of the offense charged. The trial court then proceeded, however, to give the precise definition of "obscene as to minors" as contained in § 53a-193 (b). The trial court gave this definition to the jury not once, but twice. The defendant, therefore, is incorrect in arguing that the jury was not given the definition of "obscene as to minors."

The defendant also claims that the trial court failed to inform the jury that the state has the burden to prove all of the elements of "obscene as to minors" beyond a reasonable doubt. The trial court, however, expressly informed the jury, on at least two separate occasions, that the state must prove beyond a reasonable doubt each and every element necessary to constitute the crime charged. " 'The jury is presumed, in the absence of a fair indication to the contrary, to have followed the court's instructions. State v. Ortiz, 217 Conn. 648, 669, 588 A.2d 127 (1991).' State v. Parris, 219 Conn. 283, 294, 592 A.2d 943 (1991)." State v. Booker, 28 Conn. App. 34, 47, 611 A.2d 878 (1992).

## V

In his fifth claim, the defendant argues that the trial court improperly permitted the state to ask leading questions of V and C, who were called to the stand during the state's case-in-chief, and that it improperly permitted V to read from her pretrial statements.

At the time of trial, V was twelve years old and C was eleven years old. Both witnesses were hesitant to testify, and had difficulty testifying in open court regarding the many sexual encounters with the defendant. "It is axiomatic that trial courts have broad discretion to allow leading questions on direct examination depending upon the circumstances of the individual case. *Wright* v. *Blakeslee,* 102 Conn. 162, 168, 128 A. 113 (1925)." *Fonsworth* v. *Sudol,* 19 Conn. App. 368, 370, 562 A.2d 578 (1989); see also C. Tait & J. LaPlante, Connecticut Evidence § 7.12.2 (d). We cannot conclude, on the basis of the record presented, that the trial court abused its discretion in permitting the state to ask leading questions of these minor witnesses, who were victims of the crimes charged and who evinced fear and hesitancy to testify.

It is also within the trial court's discretion to decide if a witness' recollection needs to be refreshed by a document that will stimulate her memory. *State* v. *Boucino,* 199 Conn. 207, 230, 506 A.2d 125 (1986). A witness' memory may be refreshed by any memorandum that can, in fact, stimulate present recollection. *State* v. *Rado,* 172 Conn. 74, 79, 372 A.2d 159 (1976), cert. denied, 430 U.S. 918, 97 S. Ct. 1335, 51 L. Ed. 2d 598 (1977). If a witness is reading a document and cannot testify without it, however, her testimony should be stricken. *State* v. *Perelli,* 125 Conn. 321, 327, 5 A.2d 705 (1939).

In his brief, the defendant merely cited a few instances in which he alleges that the witness simply read from a prior statement, as opposed to using that prior statement to refresh her memory. In each of those instances, however, the witness stated that she had an independent memory of the incidents in question, which took place approximately two years prior, and thereafter fully testified about the incident. There is no evidence on the record, other than the defendant's bald assertion, that the witness was simply reading from her prior statements. We cannot conclude, therefore, that V simply was reading from her statement without any present recollection of the incidents.

## VI

The defendant next claims that the state improperly permitted eight witnesses to testify for the state under the constancy of accusation exception to the hearsay rule. Among these witnesses were the victims' mother, three police officers involved in the investigation of this matter, a nurse and a doctor involved in the examination of the victims at the hospital, and two social workers who also were involved in this matter. The defendant argues that the cumulative prejudicial effect to the defendant of their testimony outweighed its probative value.

"[T]he constancy of accusation doctrine allows a complainant in a sexual offense case to testify that he or she informed others of the attack. These other individuals are then allowed to testify concerning the complaint made by the victim and are permitted to relate the details of the attack as the victim narrated." *State v. Saraceno,* 15 Conn. App. 222, 247 n.6, 545 A.2d 1116, cert. denied, 209 Conn. 823, 824, 552 A.2d 431, 432 (1988). "A trial court's broad discretion to exclude evidence more prejudicially cumulative than probative certainly encompasses the power to limit the number of

witnesses who may be called for a particular purpose."
*State* v. *Parris,* supra, 293. " 'In excluding evidence
on the ground that it would only be "cumulative," care
must be taken not to exclude merely because of an *over-
lap* with the evidence previously received. To the extent
that evidence presents new matter, it is obviously not
cumulative with evidence previously received.' (Empha-
sis in original.) 2 D. Louisell & C. Mueller, Federal Evi-
dence § 128." Id.

Just as in *State* v. *Parris,* supra, we conclude that
the constancy of accusation testimony presented in this
case was not cumulative. "[E]ach item of the state's
constancy evidence, while overlapping in the sense that
it related to the same incident, pertained to a differ-
ent statement that the victim had made to a different
person at a different point in time. Rather than preju-
dicially cumulative, therefore, the evidence covered new
matter by demonstrating, as was its relevant purpose,
that the victim previously had reported the incident she
described on direct examination in a constant and con-
sistent fashion." Id.

The defendant also claims that two of the witnesses'
constancy of accusation testimony should have been
excluded from evidence because their contact with the
victims was too remote in time. This claim merits lit-
tle discussion. As even the defendant recognizes, " '[i]t
has long been the established law of this state that delay
of this nature does not affect the admissibility of the
evidence, but merely presents a question for the trial
court as to the weight to be given it. *State* v. *DeWolf,*
8 Conn. 93, 100 [1830]; *State* v. *Byrne,* 47 Conn. 465,
466 [1880]; *State* v. *Sebastian,* 81 Conn. 1, 6, 69 A. 1054
[1908].' *State* v. *Dziob,* 133 Conn. 167, 169, 48 A.2d 377
(1946)." *State* v. *Saraceno,* supra, 248.

## VII

The defendant's final claim is that the trial court
improperly admitted into evidence twenty-five eight by

ten inch photographic enlargements of the pictures he took of one of the victims. The enlargements were made from the pictures on the photographic contact sheet found in the defendant's house during a search after his arrest. He claims that their introduction was extremely prejudicial to him because they were so much larger than the actual photographs found in his house, which were on a single contact sheet. Both the contact sheet and the photographs were admitted into evidence to prove the defendant's lustful desire for one of the victims, and to prove the defendant's guilt in the eleventh count, promoting a minor in an obscene performance.

Whether to admit photographs into evidence is a decision that rests in the sound discretion of the trial court, which must take into consideration whether their value as evidence, either as tending to prove or disprove a material fact or to shed light on a material inquiry, outweighs their possible prejudicial effect. *State* v. *DeJesus,* 194 Conn. 376, 385, 481 A.2d 1277 (1984); *State* v. *Piskorski,* 177 Conn. 677, 700–701, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979); *State* v. *Scuilla,* 26 Conn. App. 165, 170, 599 A.2d 741 (1991), cert. denied, 221 Conn. 908, 600 A.2d 1362 (1992). "Since the trial court exercises its broad discretion in such circumstances, its determination will not be disturbed on appeal unless a clear abuse of that discretion is shown." *State* v. *Piskorski,* supra, 701. Although the contact sheets were admitted into evidence, we conclude that the trial court did not abuse its discretion by admitting into evidence the enlarged photographs as well. The enlargements had added evidentiary value and shed light on a material inquiry because they allowed the jury to see the pictures better. We cannot conclude that the prejudicial effect, if

any, outweighed their probative value, or that the trial court abused its discretion in permitting their admission into evidence.

The judgment is affirmed.

In this opinion the other judges concurred.