# STATE OF CONNECTICUT *v.* SADETTIN ZORAVALI
## (11766)

LAVERY, LANDAU and SCHALLER, Js.

Argued January 6—decision released May 17, 1994

*Susan M. Hankins,* assistant public defender, for the appellant (defendant).

*Nancy L. Gillespie,* deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Gary W. Nicholson,* assistant state's attorney, for the appellee (state).

LAVERY, J. The defendant appeals from the judgment of conviction of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A)[1] and risk of injury to a child in violation of General Statutes § 53-21.[2] The defendant claims that the trial court improperly (1) limited the scope of cross-examination and denied the defendant's request to make an offer of proof, (2) admitted overly prejudicial evidence of uncharged misconduct and failed to instruct the jury properly about its use, (3) admitted cumulative constancy of accusation evidence, and (4) permitted the state to reopen its case to establish the identity of the accused. We affirm the judgment of the trial court.

[1] General Statutes § 53a-73a (a) provides in pertinent part: "A person is guilty of sexual assault in the fourth degree when: (1) Such person intentionally subjects another person to sexual contact who is (A) under fifteen years of age . . . ."

[2] General Statutes § 53-21 provides in pertinent part: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that . . . its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

The jury reasonably could have found the following facts. The defendant, a friend of the victim's mother, frequently visited the victim's home and occasionally baby-sat for the eight year old female victim. On at least one occasion, the defendant fondled the victim's genitalia. After the victim reported this abuse to her parents, her stepmother and certain professionals,[3] the defendant was arrested, tried and convicted.[4]

I

The defendant's first claim involves the testimony of the victim's father. Prior to trial, the witness revealed that he had been convicted of third degree larceny in 1976 and had committed other types of misconduct in the mid1970s. He was fired from his position as probationary patrolman for the Bridgeport police department for this misconduct. After an in camera review of the witness' police department personnel records, the trial court excluded this evidence as too remote.

After the witness had been cross-examined, the state discovered that he had been convicted of second degree larceny twice in 1980, carrying a gun without a permit in 1983 and first degree larceny in 1985. These convictions were not uncovered earlier because the state had searched under an incorrect date of birth. The defendant cross-examined the witness about these newly discovered convictions. The defendant was not permitted, however, to inquire whether the witness had concealed his record from the state. The trial court also denied the defendant's request to make an offer of proof regarding that possible misrepresentation.

---

[3] The victim was interviewed by detectives of the New Haven police department, a clinical social worker with Yale-New Haven Hospital, a pediatric nurse practitioner with the hospital, and two social workers with the department of children and youth services.

[4] The defendant was acquitted of sexual assault in the first degree, sexual assault in the fourth degree, and two accompanying risk of injury charges.

## A

The defendant claims that the trial court abused its discretion by excluding evidence of the witness' conviction and other misconduct in the 1970s. He claims that this exclusion violated his right to confront the witnesses against him, as guaranteed by the sixth amendment to the United States constitution. Although the defendant correctly recites his right, the right is not absolute. *State* v. *Warren,* 14 Conn. App. 688, 697, 544 A.2d 209, cert. denied, 209 Conn. 805, 548 A.2d 442 (1988), cert. denied, 488 U.S. 1030, 109 S. Ct. 839, 102 L. Ed. 2d 971 (1989). "The confrontation clause of the sixth amendment requires that the defendant be accorded some irreducible minimum of cross-examination into matters affecting the reliability and credibility of the state's witnesses. . . . We must first determine whether the defendant was allowed the minimum cross-examination so as to expose to the jury the facts from which the jurors, as the sole triers of facts and credibility, [can] appropriately draw inferences relating to the reliability of the [state's] witness. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Colon,* 28 Conn. App. 231, 235, 611 A.2d 902, cert. denied, 223 Conn. 922, 614 A.2d 827 (1992).

In this case, the defendant cross-examined the witness regarding his four most recent convictions. Thus, the defendant exposed facts from which the jury could appropriately draw inferences about the witness' credibility. In so doing, the sixth amendment was satisfied. See *State* v. *Warren,* supra, 14 Conn. App. 698. "The sixth amendment guarantee of the right of cross-examination does not include all evidence that is the least bit probative of credibility . . . ." (Internal quotation marks omitted.) *State* v. *Couture,* 218 Conn. 309, 321, 589 A.2d 343 (1991).

"Once it is established that the trial court's ruling on the scope of cross-examination is not constitutionally defective, this court will apply [e]very reasonable presumption . . . in favor of the correctness of the [trial] court's ruling . . . . To establish an abuse of discretion, [the defendant] must show that the restrictions imposed upon [the] cross-examination were clearly prejudicial." (Citations omitted; internal quotation marks omitted.) *State* v. *Kwaak,* 21 Conn. App. 138, 154, 572 A.2d 1015, cert. denied, 215 Conn. 811, 576 A.2d 540 (1990).

Here, the trial court's exclusion of the witness' earliest misconduct did not prejudice the defendant. As noted above, the defendant cross-examined the witness about his four most recent convictions thereby putting the witness' credibility before the jury. Further, the excluded incidents were over fifteen years old, well outside the ten year period used as a rough benchmark for remoteness. *State* v. *Nardini,* 187 Conn. 513, 526, 447 A.2d 396 (1982). Finally, the excluded conviction was so similar to those included that the jury would not have been exposed to facts from which they could draw different inferences about the witness' credibility. Therefore, the defendant has not demonstrated clear prejudice. See *State* v. *Kwaak,* supra, 21 Conn. App. 154.

B

The defendant also claims that the trial court abused its discretion by denying his request to make an offer of proof regarding the witness' possible misrepresentation of his record to the state's attorney. The defendant sought to inquire whether the witness had lied to the state's attorney, hoping to expose to the jurors a recent example of the witness' alleged duplicity. After the state's attorney stated that he believed the witness had not lied to him, the trial court refused the defendant's offer of proof as inviting impeachment on a collateral matter.

The trial court improperly denied the defendant's request to make an offer of proof. "An offer of proof, properly presented, serves three purposes. First, it should inform the court of the legal theory under which the offered evidence is admissible. Second, it should inform the trial judge of the specific nature of the offered evidence so the court can judge its admissibility. Third, it thereby creates a record adequate for appellate review." (Internal quotation marks omitted.) *State* v. *Lussier,* 7 Conn. App. 528, 531, 509 A.2d 81 (1986). The appellant bears the burden of providing an adequate appellate record through the offer of proof, among other vehicles. *State* v. *Rios,* 30 Conn. App. 712, 715, 622 A.2d 618 (1993) (noting rules of practice through which appellant ensures adequate record). A trial court cannot prevent a defendant from doing so. *State* v. *Lussier,* supra, 7 Conn. App. 532 (noting that trial court could not have prevented defendant from making offer of proof).

The trial court's impropriety, however, was harmless. Absent a denial of fundamental fairness or violation of a specific constitutional right, a trial court's evidentiary ruling is not constitutional in scope. *State* v. *Vilalastra,* 207 Conn. 35, 46, 540 A.2d 42 (1988). "When a trial error in a criminal case does not involve a constitutional violation the burden is on the defendant to demonstrate the harmfulness of the court's error. . . . The defendant must show that it is more probable than not that the erroneous action of the court affected the result." (Citation omitted; internal quotation marks omitted.) Id., 47.

The trial court's denial of an offer of proof did not violate a specific constitutional right. Nor did the trial court's ruling violate fundamental fairness because, as noted above, the defendant was afforded cross-examination sufficient to satisfy his sixth amendment right to confront the witnesses against him. Thus, to

prevail, the defendant had to demonstrate that it was more probable than not that the judgment of the jury would have been influenced. *State* v. *Carter*, 228 Conn. 412, 428, 636 A.2d 821 (1994).

We conclude that the defendant has not shown that it is more probable than not that the jury's verdict would have been different had he made the offer of proof. Assuming, arguendo, that the defendant had questioned the witness about the possible misrepresentation in front of the jury, we are not convinced that the jury would have drawn an even more unfavorable inference about the witness' credibility than already established by his four convictions. Further, we do not think that it was more probable than not that the defendant would not have been convicted. Even had the witness' credibility been destroyed, the jury could still have based its decision to convict on the testimony of the victim and the six other corroborating witnesses. The trial court's impropriety permits remote speculation at best; it does not call into question the result of the trial.

## II

The defendant's next claim relates to evidence of three forms of misconduct that did not form the basis of any of the charged offenses. First, the victim testified that the defendant molested her while they sat in the public waiting room of a methadone clinic attended by the victim's mother.[5] Second, the victim testified that the defendant exposed himself to her and solicited oral sex.[6] Third, the victim testified that the defend-

[5] Because the information alleged that all of the offenses had occurred at the victim's house, this incident was treated as uncharged misconduct.

[6] This evidence formed the basis of one of the charges of risk of injury to a child. The trial court granted the defendant's motion for judgment of acquittal, however, ruling that no evidence was presented that the defendant had touched the victim, as charged by the state. Thereafter, the incident was treated as uncharged misconduct.

ant digitally penetrated her cat and suggested that she might enjoy it if he did that to her.

## A

The defendant claims that the trial court improperly admitted evidence of misconduct toward the cat. He asserts that its tendency to inflame the jury far outweighed its probative value. The trial court overruled his objection, finding that the evidence permitted an inference that the defendant had a sexual interest in the victim and was not overly prejudicial. We agree.

Evidence of a defendant's prior misconduct is admissible provided (1) that it is relevant and material to intent, identity, malice, motive, a system of criminal activity or the elements of a crime and (2) that the probative value of the evidence outweighs its prejudicial effect. *State* v. *Cooper,* 227 Conn. 417, 424–25, 630 A.2d 1043 (1993). "The admission of evidence of prior uncharged misconduct is a decision properly within the discretion of the trial court. . . . The problem is . . . one of balancing the actual relevancy of the other [misconduct] evidence in light of the issues and the other evidence available to the prosecution against the degree to which the jury will probably be roused by the evidence." (Citations omitted; internal quotation marks omitted.) Id., 426–27. "Prejudice is not measured by the significance of the evidence which is relevant but by the impact of that which is extraneous. . . . All adverse evidence is damaging to one's case, but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted. C. Tait & J. LaPlante, [Connecticut Evidence] (Sup. 1992) pp. 87–88." (Citation omitted; internal quotation marks omitted.) *State* v. *Woodson,* 227 Conn. 1, 17, 629 A.2d 386 (1993).

"The trial court's discretionary determination that the probative value of evidence is not outweighed by

its prejudicial effect will not be disturbed on appeal [absent] clear abuse of discretion . . . . We note that [b]ecause of the difficulties inherent in this balancing process . . . every reasonable presumption should be given in favor of the trial court's ruling. . . ." (Citations omitted; internal quotation marks omitted.) Id.

We believe that, in context, the trial court did not abuse its discretion when it determined that the probative value of the evidence of the defendant's misconduct toward the cat outweighed its prejudicial effect. The defendant's act was of a sexual nature and directed toward the victim. As such, it permits an inference that the defendant had a sexual interest in her, which was relevant to the defendant's motivation to commit the crime charged. Further, the prejudicial effect of the evidence was minimized by the trial court's instructions to the jury limiting the purposes for which the evidence could be considered. Although prejudicial, the defendant has not persuaded us that the probative value of the evidence was outweighed by its prejudicial effect.

## B

The defendant also claims that the trial court failed to instruct the jury adequately about the proper use of the evidence of all three incidents of uncharged misconduct. The defendant asserts that the charge did not limit the jury's use of the evidence. Therefore, he argues that the charge was improper. We do not agree.

"When examining a trial court's instructions to a jury, we do not engage in a microscopic examination of the charge, dissecting it line by line, nor do we consider the challenged portions of the charge in isolation. . . . We consider the instructions as a whole to determine whether there is a reasonable possibility that the jury was misled by the charge. . . . Jury instructions need not be exhaustive, perfect or technically accurate. . . . They must be correct in law, adapted

to the issues presented in the case and sufficient to guide the jury in reaching a verdict. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Ray,* 30 Conn. App. 95, 107, 619 A.2d 469 (1993), rev'd on other grounds, 228 Conn. 147, 635 A.2d 777 (1994).

Considered in context, the charge was sufficient. The trial court instructed the jury that evidence of molestation at the methadone clinic could not be used to convict the defendant.[7] Further, the court told the jury that the evidence could be used in two ways: as evidence of the victim's credibility and the defendant's intent to commit the crimes charged. The court later reiterated that the evidence of misconduct at the methadone clinic could not be used as substantive proof of any of the elements required to convict the defendant.

[7] The instructions relating to misconduct at the methadone clinic were as follows: "Now, you will note that in the six remaining counts that the state alleges that the acts occurred at Clinton Avenue. Notice specifically at Clinton Avenue. Although there was some testimony that some conduct took place on Legion—the methadone clinic on Legion Avenue . . . you cannot convict [the defendant] for those activities for he is not charged with those activities.

"The testimony involving Legion Avenue can be considered by you in two respects, it may be considered to such extent as it may bear on [the victim's] credibility, whether it's consistent or inconsistent with the story she told other people.

"It may also be considered to aid you in determining whether [the defendant] exhibited a sexual interest in [the victim] bearing on his intent to commit the crimes charged in the information. [The defendant] is on trial only for those crimes charged as having been specifically committed at Clinton Avenue in New Haven. Remember that you are only to consider those crimes charged.

\* \* \*

"Again, I remind you that the state has specifically charged the defendant with the crime of a sexual assault in the first degree in the Clinton Avenue home and the conduct that you may find to have occurred at the methadone clinic on Legion Avenue could not be constituted to satisfy the proof required to establish any element of the crime alleged to have occurred at the Clinton Avenue home.

"I tell you that for the limited purpose that that evidence may be used and for which you may consider it."

We believe that this charge was sufficient to guide the jury to a proper verdict. The court twice stated that the evidence could not be used as proof of any element of the crimes charged, and explained that the two permissible uses were credibility and intent. On the whole, we conclude that no reasonable possibility exists that the jury was misled.

The defendant also claims that the trial judge improperly failed to limit the jury's use of evidence that he had exposed himself to the victim. The court explained, however, that the evidence of exposure could not be used substantively to prove that the defendant was guilty of any crime.[8] The court further instructed that the evidence could be used for the other, nonsubstantive purposes that the court had explained earlier: intent and credibility. The court ended by restating that the evidence could not be used to convict the defendant of the crimes charged.

This instruction was sufficient. The court instructed the jury twice that the evidence could not be used in any substantive way to prove the defendant's guilt. Thus, the jury was prohibited from using it to show predisposition or past conduct implying present guilt. Jury instructions need not be exhaustive: the court did not have to attempt to list every type of improper use

---

[8] The instructions regarding evidence of exposure were as follows: "You will note that one of the elements of the crime of risk of injury requires that the defendant be proven beyond a reasonable doubt to have committed an act upon the person of the victim, that is, that it must have been an act perpetrated upon the person of [the victim] by the defendant, and the allegation was that he exposed himself and that he asked her to perform a certain act. There is no evidence that there was any act perpetrated upon her person, there was no touching of any sort, therefore, the evidence was not sufficient to sustain that charge and the court withdrew it from your consideration, so you understand that. And you may not use that evidence relating to that, those acts, as anything substantive to prove that the other acts occur[red]. As I indicated, it may go to other areas of your consideration, but not to prove that these particular acts did, in fact, occur that he is specifically charged with."

imaginable under the rubric of substantive use for conviction. In this context, prohibiting the entire category was sufficient.

Finally, the defendant claims that the trial court failed to restrict adequately the jury's use of the evidence of misconduct toward the cat. The trial court prohibited the jury from using the cat incident to prove any of the elements of the crimes charged.[9] The court stated that the evidence could be used only to prove intent and "things of that nature." This admittedly unspecific instruction followed the other two explicit instructions on use of evidence of uncharged misconduct. Thus, the jury already had heard twice that evidence that could not be used substantively, could be used for intent and credibility. In this instruction, the court prohibited substantive use and referred again to the permissible uses: intent and credibility. The phrase "things of that nature" cannot be presumed to refer to impermissible uses such as predisposition or past conduct implying present guilt. Such a use would be to prove the essential elements of the crime charged, a use explicitly prohibited in the previous sentence. Finally, impermissible uses are dissimilar to intent and credibility. Thus, impermissible uses would not be "things" in the nature of intent. Therefore, we conclude that these instructions were sufficient.

### III

The defendant next claims that the trial court improperly admitted cumulative testimony under the constancy

[9] The instructions relating to the evidence of misconduct toward the cat were as follows: "And, again, I call to mind the fact that withdrawn—I mean, withdrawn from your consideration is any evidence relating to the alleged assault on the cat, that did not constitute any touching of [the victim], so that is not evidence that can be considered for the purpose of proving the essential elements of this crime. It may be used for purposes of determining intent and things of that nature, however."

of accusation doctrine.[10] The state was permitted to present seven witnesses who testified about the victim's accusations. The trial court overruled the defendant's motion to exclude some of these witnesses as cumulative.

The constancy of accusation doctrine permits witnesses to testify about what the victim of a sex-related offense told them. *State* v. *Parris,* 219 Conn. 283, 289–90, 592 A.2d 943 (1991); C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 11.22.1. The doctrine admits testimony about the details of the assault as recounted to the witness by the victim. *State* v. *Parris,* supra, 290; C. Tait & J. LaPlante, supra, § 11.22.3. It is, in short, an exception to the hearsay rule. *State* v. *Bailey,* 32 Conn. App. 773, 779, 631 A.2d 333 (1993); C. Tait & J. LaPlante, supra, § 11.22.1.

"A trial court's broad discretion to exclude evidence more prejudicially cumulative than probative certainly encompasses the power to limit the number of witnesses who may be called for a particular purpose. . . . In excluding evidence on the ground that it would only be cumulative, care must be taken not to exclude merely because of an *overlap* with the evidence previously received. To the extent that evidence presents new matter, it is obviously not cumulative with evidence previously received." (Citations omitted; emphasis in

---

[10] The defendant sought on appeal to have the doctrine overruled. This claim is not properly before us because the defendant withdrew his general objection to the constancy of accusation evidence. Practice Book § 4185. We note, however, that our Supreme Court recently reconfirmed that the constancy of accusation doctrine "is 'rationally and socially adapted to ascertaining the truth . . . .' " *State* v. *Parris,* 219 Conn. 283, 292, 592 A.2d 943 (1991). "As an intermediate appellate court, we must follow the precedent of our Supreme Court along the path which our considered reading of that precedent lays out for us." *Burton* v. *Planning Commission,* 13 Conn. App. 400, 409, 536 A.2d 995 (1988), aff'd, 209 Conn. 609, 553 A.2d 161 (1989). Thus, even if the claim was properly before us, the defendant would not prevail.

original; internal quotation marks omitted.) *State* v. *Parsons,* 28 Conn. App. 91, 105–106, 612 A.2d 73, cert. denied, 223 Conn. 920, 614 A.2d 829 (1992).

The constancy of accusation testimony presented in this case was not cumulative. Although all of the testimony overlapped, in the sense that it arose from the same incident, all of the testimony pertained to different statements made by the victim to different people at different times. Rather than prejudicially cumulative, therefore, the evidence covered new matter by demonstrating that the victim had reported the abuse constantly and consistently. *State* v. *Parris,* supra, 219 Conn. 294; *State* v. *Parsons,* supra, 28 Conn. App. 106.

## IV

Finally, the defendant claims that the trial court improperly permitted the state to reopen its case-in-chief to enter identity evidence. The defendant further claims that without reopening the state's case, the defendant's identity was not sufficiently proven to convict. We believe neither that the trial court abused its discretion nor that the evidence was insufficient to establish identity.

" '[I]f a trial court feels that, by inadvertence or mistake, there has been a failure to introduce available evidence upon a material issue in the case of such a nature that in its absence there is a serious danger of a miscarriage of justice, it may properly permit that evidence to be introduced at any time before the case has been decided.' " *Wood* v. *Bridgeport,* 216 Conn. 604, 606, 583 A.2d 124 (1990), quoting *Hauser* v. *Fairfield,* 126 Conn. 240, 242, 10 A.2d 689 (1940). Thus, witnesses can be permitted to elaborate or to explain testimony already given. *State* v. *Allen,* 205 Conn. 370, 380, 533 A.2d 559 (1987), citing *State* v. *Brigandi,* 186 Conn. 521, 545–46, 442 A.2d 927 (1982).

The decision to reopen a criminal case to add further testimony lies within the sound discretion of the trial court. *State* v. *Carter,* supra, 228 Conn. 420. "The trial judge's discretion, which is a legal discretion, should be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." (Internal quotation marks omitted.) Id., 421, quoting *State* v. *McKnight,* 191 Conn. 564, 576–77, 469 A.2d 397 (1983). The purpose of this discretion is "to preserve the fundamental integrity of the trial's truth-finding function." *State* v. *Carter,* supra, 426. The trial court's discretion will be reversed only upon manifest abuse of discretion or injustice. *Ostolaza* v. *Warden,* 26 Conn. App. 758, 778, 603 A.2d 768, cert. denied, 222 Conn. 906, 608 A.2d 692 (1992).

A trial court abuses its discretion by reopening the state's case "when the state has failed to make out a prima facie case because insufficient evidence has been introduced concerning an essential element of a crime and the defendant has specifically identified this evidentiary gap in a motion for judgment of acquittal . . . ." *State* v. *Allen,* supra, 205 Conn. 385. The waiver rule prohibits appellate review of the sufficiency of the state's prima facie case if the defendant presents evidence after the motion is denied.[11] See *State* v. *Booker,* 28 Conn. App. 34, 41–42, 611 A.2d 878, cert. denied, 223 Conn. 919, 614 A.2d 826 (1992), cert. denied, U.S.    , 113 S. Ct. 1271, 122 L. Ed. 2d 666 (1993). Thus, when the state does not concede that it failed to establish a prima facie case and the defendant presented evidence, we must rely on the trial court's determination. See id. If the trial court had ruled that a

[11] Our Supreme Court did not discuss the waiver rule in *Allen.* See *State* v. *Allen,* supra, 205 Conn. 383. The rule was not implicated because, in *Allen,* the state conceded that it had failed to establish a prima facie case. Id. Because this issue was undisputed, no evaluation was required. See id.

prima facie case had not been made, then reopening the state's case would have been an abuse of discretion. *State* v. *Allen,* supra, 385. When, as in this case, the trial court has ruled that the state has established a prima facie case, the trial court's decision to reopen was within its discretion. *State* v. *Carter,* supra, 228 Conn. 420.

We note, however, that we would reach the same result even if the waiver rule did not bar our review of the state's prima facie case. The state had adduced sufficient evidence of identity to establish a prima facie case against the defendant before reopening its case. The victim identified the defendant in court when she testified that a man named Sammie, who was a busboy where her mother was a waitress, came to her birthday party, brought her a teddy bear and periodically babysat while her mother worked. The defendant met this description. The victim testified that Sammie had molested her.

In addition to the victim's direct testimony, the victim's father testified that the victim had told him that the defendant had molested her. Similar testimony was offered by several other constancy of accusation witnesses. Although this evidence cannot be used substantively, it does bolster the victim's credibility and corroborate her testimony. *State* v. *Bethea,* 24 Conn. App. 13, 17–18, 585 A.2d 1235, cert. denied, 218 Conn. 901, 588 A.2d 1076 (1991).

Thus, even without further evidence, the state had established a prima facie case against the defendant. Therefore, the trial court's decision to reopen the state's case to add evidence inadvertently omitted was within the trial court's discretion.

The judgment is affirmed.

In this opinion the other judges concurred.